**Mary Jane KERR–SELGAS,**
**Plaintiff, Appellee,**

v.

**AMERICAN AIRLINES, INC. and**
**Whadzen Carrasquillo, Defendants, Appellants.**

No. 94–1972.

United States Court of Appeals,
First Circuit.

Heard May 4, 1995.

Decided Nov. 13, 1995.

Arthur R. Miller, with whom Weil, Gotshal & Manges was on brief, for appellants.

Judith Berkan, with whom Rosalinda Pesquera and Mary Jo Mendez were on brief, for appellee.

Before CYR, Circuit Judge, COFFIN and BOWNES, Senior Circuit Judges.

CYR, Circuit Judge.

Defendants American Airlines, Inc. ("American") and Whadzen Carrasquillo ("Carrasquillo") mount several challenges to the special verdicts which formed the basis for a $1,500,000 award to plaintiff Mary Jane Kerr–Selgas ("Kerr"), a former American employee, on her sex discrimination, retaliation, and invasion of privacy claims. We vacate the punitive damages award, and affirm the district court judgment as modified.

I

## BACKGROUND [1]

Kerr was hired by American as a reservations sales agent in the summer of 1974. Thereafter, she was transferred to the Cargo Sales Division as a telephone representative in 1975; promoted to junior freight account

---

1. We relate the evidentiary background in the light most favorable to the jury verdicts. *See* *Havinga v. Crowley Towing & Transp. Co.*, 24 F.3d 1480, 1482–83 (1st Cir.1994).

executive in March 1987, and to account executive in December 1987; then terminated on November 30, 1992, ostensibly in a company-wide reduction in force.

At trial, Kerr sought to establish that her promotion to account executive had been part of a plan by her Cargo Sales Division supervisor, defendant-appellant Carrasquillo, to manipulate her into an "amorous relationship." The evidence demonstrated that Carrasquillo treated Kerr unfairly after she rejected his sexual advances. He disparaged her in front of co-workers and clients, made intrusive inquiries and derisive comments concerning her private life and her personal appearance, and discriminated against her in job-related matters by excluding her from company activities and a complimentary trip abroad.

Kerr submitted a formal written complaint against Carrasquillo on March 9, 1992, which led to an offer from American that she remain an account executive under Carrasquillo's supervision, transfer to another position within the company, or leave the company. When Kerr later inquired about a possible transfer to a different division, she was informed that it had already been arranged by Carrasquillo without her knowledge. Kerr then wrote to the personnel manager, noting that she had been discriminated against and her March 9 complaint had never been answered, and advising that she opposed the prearranged transfer. Consequently, American revoked the scheduled transfer, and Kerr remained under Carrasquillo's supervision.

Two weeks later, Kerr received her first negative job performance evaluation from Carrasquillo, as well as a First Advisory alleging that she had disregarded his work-related instructions. She received a Second Advisory the following month.[2] Although American instructed Carrasquillo to withdraw the Second Advisory, it remained in her personnel file and American relied on it as a partial basis for her termination on November 30, 1992, which American explained as follows:

> Missed revenue plan in every month during 1st and 2nd quarter in 1992. Employ-

ee does not encourage or foster team work in SJU Sales Office. She has been counseled by her supervisor regarding her behavior and poor judgment.

Shortly thereafter, Kerr lodged a sex discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), received a "right to sue" letter, and filed this lawsuit in the United States District Court for the District of Puerto Rico. The complaint alleged sex discrimination, sexual harassment, and retaliation under both commonwealth and federal law, as well as pendent commonwealth claims for wrongful termination and violation of her right to privacy.

At trial, Kerr established that she had exceeded her sales goal by a greater margin than any other salesperson in San Juan during the third quarter of 1992, and, contrary to Carrasquillo's allegations, that she got along well with co-workers and clients. As evidence of the allegedly pretextual termination, Kerr pointed to the close temporal proximity between her discrimination complaint, on the one hand, and the advisories and poor job-performance evaluation received from Carrasquillo.

Three weeks into the trial, the case was submitted to the jury on a special verdict form, which is set out in full as completed by the jury:

### VERDICT

We, the Jury, find as follows:

**A. SEX DISCRIMINATION CLAIMS:**

1. Has plaintiff Mary Jane Kerr proved that her sex (gender) was, more likely than not, a motivating factor in defendants' employment decisions after July 15, 1991?

YES  X          NO ____

If your answer to question number 1 is "YES", please answer question number 2.

If your answer to question number 1 is "NO", do not answer question number 2 and proceed to answer the questions under the heading "Retaliation Claims".

2. Have defendants American Airlines and Whadzen Carrasquillo proved, more likely than not, that they would have made

---

2. An "Advisory" is a disciplinary memorandum; a "Second Advisory" may lead to termination.

the same employment decision(s) concerning plaintiff even if the unlawful motive, namely plaintiff's sex, was not present?

YES  X  NO ____

**B.  RETALIATION CLAIMS:**

3.  Has plaintiff Mary Jane Kerr proved that her reporting the claim to the employer or her filing of a discrimination charge with the Puerto Rico Department of Labor and the Equal Employment Opportunity Commission was, more likely than not, a motivating factor in defendants' employment decisions to terminate her employment after July 15, 1991?

YES  X  NO ____

If your answer to question number 3 is "YES", please answer question number 4.

If your answer to question number 3 is "NO", do not answer question number 4 and proceed to answer the questions under the heading "Sexual Harassment".

4.  Have defendants American Airlines and Whadzen Carrasquillo proved, more likely than not, that they would have made the same employment decision concerning plaintiff even if unlawful motive, namely plaintiff's filing of a discrimination charge with the Puerto Rico Department of Labor and the Equal Employment Opportunity Commission, was not present?

YES  X  NO ____

**C.  "HOSTILE ENVIRONMENT" SEXUAL HARASSMENT:**

5.  Has plaintiff Mary Jane Kerr proved that she was, more likely than not, subject to "hostile environment" sexual harassment by Whadzen Carrasquillo while he was her supervisor since July 15, 1991?

YES ____  NO  X

If your answer to question number 5 is "YES", please answer question number 6.

If your answer to question number 5 is "NO", do not answer question number 6 and proceed to answer the questions under the heading "Right to Privacy".

6.  Have defendants American Airlines and Whadzen Carrasquillo proved, more likely than not, that the behavior com-

plained of did not affect a tangible condition of Mary Jane Kerr's employment?

YES ____  NO ____

**D.  RIGHT TO PRIVACY:**

7.  Has plaintiff Mary Jane Kerr proved that her right to privacy was, more likely than not, violated by Whadzen Carrasquillo while he was her supervisor since July 15, 1991?

YES  X  NO ____

**E.  WRONGFUL DISCHARGE CLAIM:**

8.  Have defendants proved that there was just cause for the layoff of plaintiff Mary Jane Kerr on November 30, 1992?

YES ____  NO  X

If your answer to question number 8 was "NO", please indicate the amount of severance pay plaintiff is entitled to in dollars:  $20,000.00.

**F.  DAMAGES:**

If your answer to any of the questions numbered 1, 3, 5 or 7 was "YES", then proceed to answer questions numbered 9 and 10.  If your answer was "YES" only to question number 8, do not answer the questions numbered 9 and 10 and return your verdict.

9.  Under the law given to you in the judge's instructions, state the amount of compensatory damages plaintiff should be awarded.

$1,000,000.00;  multiplied  by  2 = $2,000,000.00 [3]

10.  Under the law as given to you in the instructions, state the amount, if any, of punitive damages that the plaintiff should be awarded.  State such award in the space numbered **10B.**  If you decide not to grant punitive damages, say so by placing an "X" in the space numbered **10A.**

10A.  ____ Punitive damages should not be awarded.

10B.  $350,000.00 in punitive damages should be awarded.

San Juan, Puerto Rico, March 17, 1994.

/s/ [Signed by foreperson]
FOREPERSON

---

**3.**  The court instructed the jury to double the compensatory damages on the sex discrimination and retaliation claims pursuant to P.R.Laws Ann. tit. 29, §§ 146, 1341 (1994).

After conferring with counsel, the district court determined that the jury responses to certain special verdicts were inconsistent. The court suggested to counsel that the jury be asked to "['T]ell us what you mean … when you answer[ed] questions number two and number four in the affirmative?[']." Counsel neither took exception to the proposed resubmission, nor to the following formulation which the court put to the jury:

Please explain to us the meaning of your verdict, part A (sex discrimination claims) and part B (retaliation claims). Was it your intention to find in favor of the plaintiff or in favor of the defendants, in each of these claims?

The jury responded that it intended to find for Kerr on the sex discrimination claims and on the retaliation claims, as reflected in special verdicts 1 and 3. The district court thereupon entered judgment against American and Carrasquillo, jointly and severally, for $2,000,000 in undifferentiated compensatory damages on the sex discrimination, retaliation, and invasion of privacy claims under Puerto Rico law; $350,000 in undifferentiated punitive damages on the federal claims; and $20,000 in "severance pay" on the wrongful discharge claim.

Contending that there was no inconsistency among the special verdicts, the defendants moved for judgment as a matter of law, or for a new trial, *see* Fed.R.Civ.P. 50(b), and, in the alternative, for a remittitur. Then, for the first time, defendants asserted that the resubmission to the jury, previously agreed upon by all parties, contravened the Seventh Amendment and Fed.R.Civ.P. 49(a) (prescribing special verdicts procedure) by subverting special verdicts 2, 4, and 8. According to the defendants, the jury found, in special verdicts 2 and 4, that the defendants had established their affirmative defenses to the sex discrimination and retaliation claims addressed in special verdicts 1 and 3, respectively, thereby nullifying the findings in special verdicts 1 and 3 and precluding any damages awards for sex discrimination and retaliation in special verdicts 9 and 10, respectively.

The district court rejected the Seventh Amendment challenge to the resubmission, on the ground that the jury merely confirmed its original findings for Kerr in special verdicts 1 (sex discrimination) and 3 (retaliation). In addition, the district court concluded that special verdicts 2 and 4—determining that defendants would have dismissed Kerr even if their unlawful motives (viz., sex discrimination and retaliation, respectively) had not activated their decisions—were not inconsistent with special verdict 8—the finding that there was no just cause for the dismissal. The court reasoned that the jury responses to special verdicts 2 and 4 did not mean that defendants had met their burden of proof on their affirmative defenses, but rather that the jury had found "some proof" that defendants had "other reasons"—beyond unlawful gender discrimination and retaliation—for dismissing Kerr.

The district court accordingly confirmed the special verdicts on the sex discrimination, retaliation, and privacy claims. It conditioned its denial of the motion for new trial—on the sex discrimination, retaliation, and privacy claims—upon Kerr's acceptance of a remittitur in the amount of $400,000 on the compensatory damages award. The court then attributed the entire compensatory damages award in special verdict 9 (doubled according to Puerto Rico law) to the *commonwealth* claims, and the entire punitive damages award in special verdict 10B to the *federal* claims. As the court allocated no compensatory damages to the federal claims, it then reduced the $350,000 punitive damages award on the federal claims to $300,000, pursuant to 42 U.S.C. § 1981a(b)(3)(D) (capping combined compensatory and punitive damages award under Title VII at $300,000). Finally, the court set aside the $20,000 severance pay award under special verdict 8 as superfluous, in light of the compensatory damages award in special verdict 9. In sum, the composite compensatory damages award, as reduced to $600,000, was doubled to $1,200,000, *see supra* note 3, resulting in a total compensatory and punitive damages award of $1,500,000. *See* Fed.R.Civ.P. 59(a).

On appeal, defendants challenge the Seventh Amendment ruling; the sufficiency of the evidence supporting the liability verdict and the compensatory damages award on the

privacy claim; and the $300,000 punitive damages award. We discuss their arguments in turn.

## II

### DISCUSSION

#### A. *Special Verdicts*

##### 1. *Inconsistency*

■ Appellants contend that the jury responses to special verdicts 1 through 4 were *consistent* from the outset, and, therefore, that the resubmission contravened their Seventh Amendment right to jury trial. Appellants argue that these four special verdicts plainly indicate that the jury found that their *affirmative defenses* to the sex discrimination and retaliation claims had been proven; viz., that even if the defendants had not been motivated by gender or retaliation, they would have made the same employment decision. *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 258, 109 S.Ct. 1775, 1794, 104 L.Ed.2d 268 (1989) ("defendant may avoid a finding of liability only by proving ... that it would have made the same decision even if it had not taken the plaintiff's gender into account."); 42 U.S.C. § 2000e–5(g)(2)(B) (where employer establishes that same employment action would have been taken absent gender discrimination, plaintiff may be awarded attorney fees, as well as appropriate declaratory and injunctive relief, but neither *damages nor reinstatement* are available); *see also Griffiths v. CIGNA Corp.,* 988 F.2d 457, 472 (3d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 186, 126 L.Ed.2d 145 (1993) (same affirmative defense applicable to retaliation claim). Only in this way, as American sees it, can special verdicts 2 and 4, respectively, be reconciled with special verdict 8 (finding that defendants had no "just cause for the layoff of plaintiff Mary Jane Kerr on November 30, 1992.").

Appellants reason to this conclusion from the correct premise that the jury was never instructed, either in the charge or the verdict form, that damages could not be awarded for sex discrimination, nor for retaliation, if it were to find that the defendants would have taken the same employment action *in any event. See Price Waterhouse,* 490 U.S. at 258, 109 S.Ct. at 1794. Indeed, the special verdict form itself, *see supra* at p. 6, ¶ F., explicitly *instructed* the jury to respond to special verdicts 9 (awarding compensatory damages) and 10B (awarding punitive damages) if it answered "yes" to special verdicts 1, 3, 5 *or* 7. Any *perceived* inconsistency between special verdicts 2 and 4, on the one hand, and special verdicts 9 and 10B, was brought about by the absence of an instruction to bypass special verdicts 9 and 10 in the event special verdicts 2 and 4 were answered in the affirmative. An insurmountable obstacle blocks the path to the "consistent" verdicts scenario posited by appellants.

The consistency theory advanced by appellants cannot explain the jury finding (special verdict 8) that there was no "just cause" for Kerr's dismissal. Appellants assert that the jury could consistently find (a) that an improper factor (sex or retaliation) was present, (b) but that proper reasons accounted for Kerr's dismissal, and (c) that the presence, in this marginal way, of an improper factor could support a finding of no "just cause." We do not accept the latter proposition. Under the jury instructions given by the court, defendants would have "be[en] deemed to have just cause" if "the dismissal [had been] made on neutral, non-discriminatory grounds." The finding of no "just cause," therefore, demonstrates conclusively that discriminatory intent was a decisive factor in Kerr's dismissal.

■ In our view, therefore, appellants' characterizations of the special verdicts lack the necessary plausibility to demonstrate consistency. Consequently, we now reexamine the special verdicts, and the record, to determine whether "there is a view of the case that makes the jury's answers" consistent. *See Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines Ltd.,* 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962) ("Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way. For a search for one possible view of the case which will make the jury's findings inconsistent results in a collision with the Seventh Amendment.").

Special verdicts 2 and 4 contain a latent ambiguity which originated in the special verdicts proposed by the defendants at trial; viz., neither special verdict 2 nor 4 precluded an affirmative response in the event the jury decided to respond in the affirmative to *both* special verdicts 1 and 3.[4] That is, since the jury found that defendants' employment decisions were motivated *both* by unlawful gender discrimination (special verdict 1) *and* by unlawful retaliation (special verdict 3), its affirmative responses to special verdicts 2 and 4 did *not* indicate that defendants had succeeded in establishing their affirmative defenses. Rather, the jury found, in special verdict 2, that defendants would have discharged Kerr even if they had not been motivated, in part, by unlawful gender bias (special verdict 1) because defendants at the same time harbored an *unlawful retaliatory motive* (special verdict 3). Conversely, even if defendants had not been motivated, in part, by unlawful retaliation (special verdict 3), the jury found in special verdict 4 that defendants would have dismissed Kerr based on their *unlawful gender-based motive* (special verdict 1).

Thus, the inconsistency perceived by appellants is both illusory and impermissible. *Id.* The jury correctly construed special verdicts 2 and 4—which did not preclude their consideration of the *unlawful* motives found in special verdicts 3 and 1, respectively—as warranting affirmative responses if the jury

were to find that defendants would have dismissed Kerr in retaliation for filing the EEOC claim had they not been motivated to do so on unlawful gender-based grounds; and vice-versa.

■ In so doing, the jury rendered consistent special verdicts all around, notwithstanding the latent ambiguity in special verdicts 2 and 4. There is no inconsistency between either special verdict 2 or 4, on the one hand, and special verdict 8, since the latter asks only whether defendants had "*just* cause" for dismissing Kerr (emphasis added), whereas special verdicts 2 and 4 contemplated other *unlawful* motives for defendants' employment actions as well. Finally, as is obvious, there is no inconsistency between special verdicts 2 and 4, on the one hand, and special verdict 9, since the liability verdicts—special verdicts 1 and 2 (sex discrimination) and 3 and 4 (retaliation), called for jury consideration of a *composite* compensatory damages award (special verdict 9) on the sex discrimination and retaliation claims. Since the jury responses to special verdicts 1 *and* 3 found *two* unlawful motives (i.e., sex discrimination and retaliation, respectively) for defendants' adverse employment actions, the jury could not answer "no" to special verdict 2 without undermining special verdict 3, nor to special verdict 4 without undermining special verdict 1. The jury's responses to special verdict 8, and to the

4. In a post-argument memorandum, appellants argue that the district court "specifically instructed the jurors that they had to find that American Airlines would have taken the same actions even if *both* unlawful motives were absent." (emphasis in original). They rely on the following language in the jury charge:

> *Defendant is claiming,* in the alternative, that even if sex *or* the filing of sex discrimination charges were motivating factors in their decisions, they would have taken the same actions concerning plaintiff in the absence of the unlawful motives. If you have so find [sic], please indicate your finding in the verdict form. (Emphasis added.)

The defendants mischaracterize the instruction. The court did not instruct the jury "to find that American Airlines would have taken the same actions even if *both* unlawful motives were absent." Rather, the court informed the jury that "[d]efendant is *claiming,* in the alternative, that even if sex *or* the filing of sex discrimination charges were motivating factors in their deci-

sions, they would have taken the same actions concerning the plaintiff in the absence of the unlawful motive*s.*" (emphasis added).

In this manner, the court merely reminded the jury that if it were to find either an intent to discriminate *or* retaliate, the defendants nonetheless were relying on their affirmative defenses by contending that they would have taken the challenged actions even in the absence of whatever unlawful motivation, if any, the jury might find had animated defendants' actions. Thus, the ambiguous language relied on by defendants does not undermine the jury's responses to the special verdict form, *see infra* p. 1211, nor the common-sense reasoning evinced in its consistent verdicts, since there was nothing in the instructions accompanying the verdict form to which the court adverted that would have required the jury to respond differently to special verdicts 2 and 4 were it to find, as it did, that defendants had engaged in both unlawful sex discrimination and unlawful retaliation.

resubmission, are similarly explained; viz., though there was no alternative "just cause" for the dismissal, there were alternative unlawful motives. Accordingly, having found defendants liable to Kerr on both the sex discrimination and retaliation claims, the jury rightly proceeded to award damages.

### 2. *Resubmission*

■ Kerr correctly contends that appellants failed to preserve their claims relating to the resubmission. Shortly before the resubmission, the district court asked defendants' trial counsel to state their position regarding the following resubmission proposal:

> What if we simply ask them, tell us what you meant? Express in writing without telling them one way or the other, what you meant when you answer[ed] questions number two and number four in the affirmative?
>
> [Counsel to American]: Your Honor, well, if they're going to be questioned on that verdict form, that they be—I think that the question would be, what did you mean, as stated by your Honor.

In all events, any error in the resubmission— and we discern none—was harmless, as the jury merely confirmed its consistent special verdicts and the Seventh Amendment was not infringed. *See supra* Section II A 1.

### B. *The Privacy Claim*

■ American contends on appeal that the applicable one-year statute of limitations, P.R.Laws Ann. tit. 31, § 5298(2) (1991), required Kerr to establish the alleged privacy violation on evidence of conduct occurring after December 28, 1991, one year before the present action was brought. Although American alluded to this issue in its answer and in its proposed jury instructions, it failed to raise contemporaneous objection to the evidence introduced at trial relating to conduct antedating the one-year limitation period. Not until after Kerr rested her case in chief did American deliver its one-two punch, by moving for judgment as a matter of law, *see* Fed.R.Civ.P. 50(a), asserting, in part, and for the first time, that there was insufficient

evidence of a privacy violation within the one-year limitations period.

The district court denied the motion, ruling that the one-year limitations period on the privacy claim had been tolled, on May 11, 1992, by the filing of an administrative charge with the Puerto Rico Antidiscrimination Unit, thereby rendering actionable all conduct after May 11, 1991. Later, in an effort to minimize confusion, the district court instructed the jury to consider only evidence of conduct occurring on and after July 15, 1991, explaining that evidence of earlier events could be considered "as background evidence only . . . [and] cannot be the object of recovery."

After the jury returned its verdict for Kerr on the privacy claim, and the district court entered judgment, American renewed its Rule 50 motion, which neither challenged the one-year limitations period nor the district court instruction on the purposes for which the jury could consider Kerr's evidence relating to the privacy violations. American only now contends that the jury instruction was erroneous and, therefore, that it is entitled to a new trial on the privacy claim. Its belated claim fails.

■ The record clearly discloses that American did not raise a proper objection to the jury charge as required by Fed.R.Civ.P. 51. "No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Fed.R.Civ.P. 51. Our cases state that objections to jury instructions are to be made after the charge has been delivered to the jury. *Poulin v. Greer*, 18 F.3d 979, 982 (1st Cir.1994); *McGrath v. Spirito*, 733 F.2d 967, 968 (1st Cir.1984).

After the jury charge was given below, the following colloquy occurred:

> [The Court]: Please. And to the charge, we'll discuss that up here.
>
> [Plaintiff's counsel]: No problem with the charge.
>
> [Defendant's counsel]: I have no problem with the charge.

[The Court]: Without prejudice of your disagreement over the cutoff date, as [a] matter of law, you have no problem with the charge?

[Defendant's counsel]: That's correct.

We have stated repeatedly that " '[a] trial court's statement after the charge that objections made prior to it will be saved does not absolve an attorney from following the strictures of the rule. Objections cannot be carried forward. The rule is binding on both the court and attorneys and neither can circumvent it.' " *Poulin*, 18 F.3d at 982 (finding that post-charge sidebar conference during which court began by stating to counsel—"Okay. First, in addition to any objections previously made, do you have an objection you wish to make as to the general content of the instructions at this time?"— failed to preserve for appeal a claim previously raised, where trial counsel failed to reiterate objection after the jury charge) (quoting *McGrath*, 733 F.2d at 969); *see also Elgabri v. Lekas*, 964 F.2d 1255, 1259 (1st Cir.1992) ("It is the obligation of trial counsel, as well as the trial court, to comply with the strict requirements of the Rule."). American failed to object to the instruction at the appropriate time.

■■■ Where no proper objection has been raised under Rule 51, we review only for plain error, to prevent a " 'clear miscarriage of justice.' " *Poulin*, 18 F.3d at 982 (citation omitted). Viewing the trial evidence in the light most favorable to the privacy claim verdict, *see supra* note 1, we cannot conclude with any confidence that American would have prevailed on the privacy claim even if the district court had instructed the jury that December 28, 1991, was the cut-off date for evidence on liability. Rather, substantial evidence was introduced at trial— relating to conduct occurring *within the limitations period now championed by American itself*—supporting a liability finding on the privacy claim.

The asserted rights to privacy and human dignity, on which the privacy claim is based, arise under the Puerto Rico Constitution. *See Arroyo v. Rattan Specialties*, 117 P.R.R. 43, 69–74 (1986) (requiring employee to submit to polygraph test, or else lose job, violates privacy right). *Arroyo* illustrates the breadth of these constitutionally protected rights, and the great importance attached to them by the Puerto Rico Supreme Court: *"Interference with private life shall only be tolerated when compelling factors of public health and safety or when the affected person's right to life and happiness require it."* *Id.* at 70 (quoting *García Santiago v. Acosta*, 104 D.P.R. 321, 324 (1975)). The district court instructed the jury that "abusive attacks to honor, reputation, and private and family life" are unlawful in the workplace. Given the posture of the case, we cannot say that the evidence Kerr marshalled at trial was clearly insufficient to permit a rational jury finding that appellants had violated her privacy rights under the Puerto Rico Constitution.

The jury was entitled to credit Kerr's testimony that a number of relevant incidents occurred in the "latter part of 1991 ... through 1992." These incidents could have been considered by the jury even under the abbreviated limitations period belatedly urged by American on appeal. Kerr said she felt demeaned as a person when Carrasquillo expressed surprise that a woman could drive around Puerto Rico without getting lost, and when he questioned whether women could safely ride motorcycles. He joked disparagingly about Kerr's weight, in front of customers and co-workers, and even invited them to comment on her physical appearance. On another occasion during this period, Carrasquillo approached her in the workplace and said she was a "mami," an inappropriate epithet adverting to Kerr's physical attributes. The jury was entitled to find as well that Carrasquillo intruded upon Kerr's private life by placing "great importance" upon an invitation she had extended to a fellow employee to stay at her house during a visit to Puerto Rico. Carrasquillo admitted at trial that he had inquired, in early 1992, concerning Kerr's earlier romantic relationship with a co-worker who later married another woman in the division.

Some of this evidence obviously bears on the gender discrimination claim as well. Nevertheless, the privacy protections afforded under the Puerto Rico Constitution are

broadly defined and we are not persuaded that the evidence recounted above could not bear upon both types of claims in this particular case, especially since Kerr tried the case to the jury on the theory that Carrasquillo's interest in her sex life was the impetus for both her gender discrimination and privacy claims. Thus, without presuming that the jury relied on any evidence of conduct antedating July 15, 1991, which would have violated the unchallenged jury instructions, *Scarfo v. Cabletron Sys., Inc.*, 54 F.3d 931, 953 (1st Cir.1995), we cannot say that the evidence, viewed in the light most favorable to the verdict, was plainly insufficient to enable a rational jury to find that Carrasquillo repeatedly displayed an intrusive preoccupation with Kerr's personal and private life, in violation of commonwealth law. In all events, we can discern no "clear miscarriage of justice." *See Poulin*, 18 F.3d at 982.[5]

## C. *Damages*

Appellants also challenge the damages awarded by the jury. We find merit only in their challenge to the punitive damages awarded on the federal claims.

### 1. *Allocation of Damages*

█ The district court attributed the total compensatory damages award to the commonwealth claims. Appellants complain that its ruling unfairly maximized Kerr's recoveries by enabling her to retain, *as punitive damages*, the maximum $300,000 in total damages permitted under federal law for intentional employment discrimination. *See* 42 U.S.C. § 1981a(b)(3)(D); *see also* special verdict 10B.

We think the district court permissibly concluded that all damages awarded under special verdict 9 represented compensation for injuries sustained in connection with the commonwealth claims. *Cf. Hogan v. Bangor & Aroostook R.R.*, 61 F.3d 1034, 1037 (1st Cir.1995) (preserving compensatory damages award by applying full damages cap to punitive damages award). The jury was instructed that only the compensatory damages

awarded on the commonwealth claims could be doubled. Therefore, the most plausible explanation consistent with the special verdicts is that the jury awarded no compensatory damages on the federal claims under special verdict 9. And since the $300,000 federal damages cap does not apply to the Puerto Rico employment discrimination claims, *cf.* 42 U.S.C. § 2000e–7 (Title VII does not relieve defendant from liability under state law), the compensatory damages award on the commonwealth claims stands.

### 2. *Punitive Damages*

█ Although we conclude that the district court supportably ascribed the entire compensatory damages award to the commonwealth claims, its ruling casts doubt upon any punitive damages award on the federal claims. As appellants point out, generally a claimant may not recover punitive damages without establishing liability for either compensatory or nominal damages. *See Cooper Distrib. Co., Inc. v. Amana Refrigeration, Inc.*, 63 F.3d 262, 281–83 (3d Cir.1995); *Restatement (Second) Of Torts* § 908 cmts. b, c (1979). Absent a compensatory damages award, we inquire whether Kerr was entitled to nominal damages on her federal claims even though she did not request such relief.

The Eighth Circuit considered a similar question in an employment discrimination action brought under 42 U.S.C. § 1981. *See Hicks v. Brown Group Inc.*, 902 F.2d 630, 652–54 (8th Cir.1990); *vacated*, 499 U.S. 914, 111 S.Ct. 1299, 113 L.Ed.2d 234 (1991) (relying on case subsequently undermined by amendment to statute). There the jury found that race formed part of the reason for firing Hicks, but that the same employment decision would have been made absent any discriminatory motive. It awarded no compensatory damages and $10,000 in punitive damages. The district court ordered a one dollar additur as nominal damages. *Hicks*, 902 F.2d at 634.

The Eighth Circuit rejected a subsequent challenge to the additur, holding that the liability verdict on the section 1981 claim

---

**5.** American has never challenged the doubling of privacy claim damages *per se*. Thus, we are not called upon to determine the propriety of dou-

bling the jury award on the privacy claim, as well as the damages on the Puerto Rico discrimination and retaliation claims. *See supra* note 3.

"automatically entitled" Hicks to a nominal damages award. *Id.* at 653. It relied on *Carey v. Piphus,* 435 U.S. 247, 266, 98 S.Ct. 1042, 1053, 55 L.Ed.2d 252 (1978), in which the Supreme Court had held that a claimant *may* recover nominal damages for a procedural due process violation without proving actual injury. *Carey* was premised on the importance of procedural due process in an organized society, and on the established principle that the right to procedural due process is "'absolute' in the sense that it does not depend on the merits of a claimant's substantive assertions...." *Id.* Similarly, in upholding both the nominal and punitive damages awards, the Eighth Circuit in *Hicks* reasoned that section 1981 "grants an absolute right to be free of discrimination in the making and enforcement of contracts, the violation of which entitles the victim to nominal damages irrespective of actual injury." *Hicks,* 902 F.2d at 652.[6]

We return briefly to the matter at hand. Although nominal damages are recoverable in intentional discrimination cases under 42 U.S.C. § 1981a(a)(1), we do not think that a liability verdict *compels* such an award absent a timely request. Kerr neither requested a jury instruction on nominal damages, nor asked the district court for an additur after it ruled that special verdict 9 included no compensatory damages on her federal claims. *See Cooper Distributing,* 63 F.3d at 281–83 (vacating $3 million punitive damages award after plaintiff failed to request nominal damages); *Sims v. Mulcahy,* 902 F.2d 524, 533–36 (7th Cir.) (finding waiver of nominal damages for failure to request jury instruction); *cert. denied,* 498 U.S. 897, 111 S.Ct. 249, 112 L.Ed.2d 207 (1990). We therefore conclude—given the circumstances of this case—that the punitive damages award must be vacated absent either a compensatory damages award, or a timely request for nominal damages, on the federal claims.

---

**6.** On the other hand, in *Walker v. Anderson Elec. Connectors,* 944 F.2d 841 (11th Cir.1991), for example, the Eleventh Circuit noted that "[n]othing in *Carey mandates* the award of nominal damages" in a Title VII case. *Id.* at 845 (emphasis added). *See also Domegan v. Ponte,* 972 F.2d

## III

### *CONCLUSION*

The judgment on liability is affirmed in all respects; the composite $1.2 million award on the commonwealth employment discrimination, retaliation, and privacy claims is affirmed; the $300,000 punitive damages award on the federal claims is vacated. The parties are to bear their own costs on appeal.

*SO ORDERED.*

401, 411 n. 17 (1st Cir.1992) (relating the *Walker* court's holding with approval); *vacated,* —— U.S. ——, 113 S.Ct. 1378, 122 L.Ed.2d 754 (1993) (citing *Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992)).