**Tonia CUSH–CRAWFORD, Plaintiff,**

v.

**ADCHEM CORP., Defendant.**

**No. 98–CV–676 (ADS).**

United States District Court,
E.D. New York.

April 14, 2000.

Law Offices of Charmaine M. Stewart & Assoc., Rosedale, NY (Charmaine M. Stewart, George B. Lewis, of counsel), for Plaintiff.

Ciarelli & Dempsey, Melville, NY(John L. Ciarelli, Patricia Dempsey, of counsel), for Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

In what is apparently a case of first impression in this circuit, this Court must decide whether, in a Title VII sexual harassment case, a jury verdict of punitive damages can be sustained where no compensatory damages were awarded.

This case concerns allegations of sexual harassment and retaliation by the Plaintiff, Tonia Cush–Crawford, against the Defendant, Adchem Corp. ("Adchem"). Following a trial, the jury returned a verdict in favor of the Plaintiff on her claim of hostile environment sexual harassment under Title VII, and a verdict in favor of Adchem on the Plaintiff's claims of *quid pro quo* sexual harassment and retaliation. The jury awarded no compensatory damages to the Plaintiff on the hostile environment claim, but awarded $100,000 in punitive damages against Adchem on that claim. Presently before the Court are the Plaintiff's motion for a new trial on damages pursuant to Fed.R.Civ.P. 59 and for an award of attorney's fees, and a motion by Adchem pursuant to Fed.R.Civ.P. 50(b) to set aside the jury's verdict on the hostile environment claim and the award of punitive damages.

### BACKGROUND

Briefly stated, the Plaintiff alleges that, while employed at Adchem, she suffered repeated unwelcome sexual advances and comments from her supervisor, Collin Mars. The Plaintiff claims that she repeatedly complained to Adchem about the advances, but that no action was taken on her complaints. Eventually, the Plaintiff was able to secure a transfer from Adchem's facilities in Westbury, N.Y. to its plant in Riverhead, N.Y., and thus escape Mars. However, she soon grew dissatisfied with the Riverhead facility and asked to return to the Westbury plant. Adchem returned the Plaintiff to Westbury, and to the supervision of Mars, although the company did place an intermediate layer of supervision between Mars and the Plaintiff. A few months later, the Plaintiff suffered an unrelated on-the-job injury, and never returned to Adchem.

The Plaintiff then commenced this action, alleging various state and federal claims sounding in sexual harassment and retaliation. Following a six-day trial, the Plaintiff presented three causes of action

to the jury under Title VII and the New York State Human Rights Law: (i) hostile environment sexual harassment; (ii) *quid pro quo* sexual harassment; and (iii) retaliation. The jury returned a verdict in favor of the Plaintiff on the hostile environment claim, and in favor of Adchem on the *quid pro quo* and retaliation claims. The jury awarded the Plaintiff $0 in compensatory damages, and $100,000 in punitive damages. Neither party requested a jury instruction on nominal damages, nor has the Plaintiff in this motion requested that, based on the verdict, the Court award nominal damages as a matter of law.

## DISCUSSION

### A. As to Adchem's motion "to set aside the verdict"

■ Adchem's motion for judgment as a matter of law seeks to set aside the jury's verdict in favor of the Plaintiff on the hostile environment harassment claim and the award of punitive damages. A court decides a motion for judgment as a matter of law under Fed.R.Civ.P. 50(a)(1) using the same standard that applies to motions for summary judgment. *Alfaro v. Wal–Mart Stores, Inc.*, 210 F.3d 111 (2d Cir. 2000). Specifically, the motion must be denied unless the court finds that there is such a complete absence of evidence supporting the verdict that the jury's finding could only have been the result of sheer surmise and conjecture, or if the evidence is so overwhelming that reasonable and fair minded persons could only have reached the opposite result. *Ryduchowski v. Port Authority of New York*, 203 F.3d 135, 141–42 (2d Cir.2000); *see also This Is Me, Inc. v. Taylor*, 157 F.3d 139 (2d Cir. 1998); *Concerned Area Residents for the Environment v. Southview Farm*, 34 F.3d 114 (2nd Cir.1994); *Weldy v. Piedmont Airlines*, 985 F.2d 57 (2d Cir.1993). In making this determination, the court is required to view the evidence in the light most favorable to, to draw all reasonable inferences in favor of, and to resolve all credibility disputes to the benefit of the non-moving party—in this case, the Plaintiff. *Ryduchowski*, 203 F.3d at 142; *Mar-*

*tinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 196 F.3d 409, 425 (2d. Cir. 1999); *Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76, 79 (2d Cir.1997).

### 1. The verdict on the hostile environment claim

■ To establish a claim for sexual harassment based on a hostile working environment, a plaintiff must show that her workplace was permeated with "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998); *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 62 (2d Cir.1998). Whether an environment is "hostile" or "abusive" depends on the totality of circumstances. *Harris*, 510 U.S. at 23, 114 S.Ct. 367.

■ Courts must consider a variety of factors including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* These factors must be evaluated from both a subjective and an objective viewpoint. *Id.* at 21–22, 114 S.Ct. 367. In addition, in order to hold her employer liable for hostile environment harassment, a plaintiff must also show that the conduct which created the hostile environment should be imputed to the employer. *Kotcher v. Rosa & Sullivan Appliance Center, Inc.*, 957 F.2d 59, 63 (2d Cir.1992). However, employers are presumptively liable for all acts of harassment perpetrated by an employee's supervisor. *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633, (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), unless the employer proves that it exercised reasonable care to prevent and

promptly correct any sexual harassment by such a supervisor, and that the employee unreasonably failed to avail herself of any corrective or preventative opportunities provided by the employer or to otherwise avoid harm. *Id.*

■ While many of the facts in this case are in dispute, viewing the evidence at trial in the light most favorable to the Plaintiff, the Court finds that the jury could reasonably have reached a verdict in her favor on the hostile environment claim. The Plaintiff testified that, shortly after her hiring in June 1993, she was subjected to numerous unwelcome and upsetting suggestive comments and advances from her supervisor, Collin Mars. She testified that this behavior commenced almost immediately after she was hired, when Mars began telling her how beautiful she looked and would ask her to go to the gym with him after work. She also testified that, when she turned down his advances, Mars began complaining about her work performance.

Mars twice invited the Plaintiff on overnight trips to Toronto and Boston. The Plaintiff initially declined the invitations, and eventually agreed to go only because Mars would remind her that he was responsible for evaluating her performance. On both trips, Mars rented a single room for both of them to occupy, and attempted to kiss and fondle the Plaintiff, saying he wanted to make love to her. The Plaintiff rejected these advances and ended both evenings in tears. Mars propositioned the Plaintiff for sex a third time at a dinner with her mother on her birthday. In addition, the Plaintiff testified that Mars made numerous unwelcome comments about her appearance throughout the course of her employment. From this evidence, the jury reasonably found that the Plaintiff has been subjected to an unwelcome, sexually charged working environment.

■ In addition, the jury could reasonably find that Adchem had failed to carry its burden of proof under *Ellerth* and *Faragher* so as to avoid liability for Mars' actions. The Plaintiff testified that in September of 1993, she complained to Tom Rauen, a Production Control Supervisor, that "Collin Mars was coming onto me and he was calling me and he kept asking me out and ... if I didn't go out with him he would get upset." In September of 1993, the Plaintiff spoke to Adchem's Vice President Rob Pufahl, who indicated that he had talked to Rauen about the Plaintiff's complaints and that he was "aware of the situation." The Plaintiff also testified that she complained about similar matters to Pufahl on July 14, 1994 and in November of 1994. It does not appear that Adchem investigated any of these complaints nor took any substantial actions to prevent additional harassment of the Plaintiff until the November 1994 complaint, at which point a person named Robert Kneur was used to relay work assignments from Mars to the Plaintiff. The Plaintiff then transferred to the Riverhead facility for a short period of time, but returned to work at the Adchem facility in Westbury, where she was again placed under the supervision of Mars and Kneur.

Given the Plaintiff's repeated complaints about Mars' conduct, and the failure of Adchem to take immediate steps to investigate and remedy the Plaintiff's allegations, the Court finds that the jury's verdict against Adchem on the hostile environment claim is supported by the record. Therefore, Adchem's motion for judgment as a matter of law on the hostile environment claim is denied.

2. *As to the award of punitive damages*

The jury awarded the Plaintiff $0 in compensatory damages and $100,000 in punitive damages. Adchem moves for judgment under Rule 50 vacating the punitive damage award on the grounds that, as a matter of law, punitive damages cannot be awarded in the absence of compensatory damages. As an initial matter, although the Plaintiff's sexual harassment claims were alleged under both Title VII and the New York State Human Rights Law, the propriety of the punitive damage award

must be assessed only under federal law, as punitive damages are not available under the State Human Rights Law. *Thoreson v. Penthouse Intl.*, 80 N.Y.2d 490, 591 N.Y.S.2d 978, 606 N.E.2d 1369 (1992).

The issue of whether punitive damages can be awarded in the absence of any compensatory damages in a case under Title VII appears to be one of first impression in this circuit, and a matter that has engendered conflict in other circuits. For example, the Seventh Circuit does not require compensatory damages to be awarded as a precondition to a Title VII plaintiff receiving punitive damages. *Timm v. Progressive Steel Treating, Inc.*, 137 F.3d 1008, 1009 (7th Cir.1998); *see also Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1349, 1351–52 (7th Cir.1995). On the other hand, the First Circuit in *Kerr–Selgas v. American Airlines, Inc.*, 69 F.3d 1205, 1214–15 (1st Cir.1995), held that an award of punitive damages under Title VII must, at a minimum, be accompanied by an award of nominal damages. Notably, *Kerr–Selgas*, among other cases, makes clear that while an award of nominal damages is permitted under Title VII, it is not mandatory. *Id.; see also Buckner v. Franco, Inc.*, 1999 WL 232704 (6th Cir. 1999) *citing Walker v. Anderson Elec. Connectors*, 944 F.2d 841, 845 (11th Cir. 1991). The Plaintiff here made no request, before or after the verdict, for a nominal damage instruction or judgement, and thus, this Court need not decide whether the Plaintiff was entitled to a nominal damage award, as a matter of law.

Although the Second Circuit has yet to weigh in on this issue, upon considered reflection, this Court finds the Seventh Circuit's approach to be correct. Nothing in 42 U.S.C. § 1981a(b) , the statute that allows punitive damages to be awarded in Title VII cases, can be read to imply a requirement that a punitive damage award be accompanied by an award of compensatory damages. Moreover, the First Circuit's analysis in *Kerr–Selgas* springs from an examination of common-law tort principles, *see* 69 F.3d at 1214, *citing inter alia Restatement (Second) of Torts*,

§ 908,while the Seventh Circuit, in this Court's view, more correctly equates a Title VII civil rights claim with civil rights claims under Section 1983. *See Timm*, 137 F.3d at 1009; *see also Meritor Savings Bank v. Vinson*, 477 U.S. 57, 72, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) ("common-law principles may not be transferable in all their particulars to Title VII"); *Paciorek v. Michigan Consol. Gas Co.*, 179 F.R.D. 216, 221 (E.D.Mich.1998) ("this Court finds the reasoning for the sharp distinction between state common law and statutory federal civil rights claims by the Seventh Circuit to be more persuasive").

It is a long-standing doctrine in this circuit that, in Section 1983 cases, an award of compensatory damages is not a prerequisite to the jury awarding punitive damages. *See Robinson v. Cattaraugus County*, 147 F.3d 153, 161 (2d Cir.1998) *citing King v. Macri*, 993 F.2d 294, 298 (2d Cir.1993) *and Stolberg v. Members of Board of Trustees*, 474 F.2d 485, 489 (2d Cir.1973); *see also Beckford v. Irvin*, 49 F.Supp.2d 170, 182 (W.D.N.Y.1999). Like the Seventh Circuit in *Timm*, this Court sees "no reason . . . for reading a compensatory-punitive link into . . . Title VII but not Section 1983." 137 F.3d at 1009.

■ Therefore, this Court holds that there is no requirement that an award of punitive damages under Title VII be accompanied by an award of compensatory or nominal damages. To the extent that this Court's jury instruction implied such a requirement, the Court finds that this error was harmless in light of the jury's decision to award punitive damages nonetheless.

■ Adchem also argues that it is entitled to judgment as a matter of law vacating the punitive damage award on the grounds that the Plaintiff failed to prove the elements necessary for such damages. 42 U.S.C. § 1981a(b)(1) states that a plaintiff may recover punitive damages by demonstrating "that the respondent engaged in a discriminatory practice or discriminatory

practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." The "reckless indifference" formulation of this language indicates that a Title VII plaintiff seeking punitive damages need not show "egregious" behavior by an employer, but merely demonstrate that the employer knew that it may have been acting in violation of federal law. *Kolstad v. American Dental Assoc.*, 527 U.S. 526, 119 S.Ct. 2118, 2124, 144 L.Ed.2d 494 (1999); *Luciano v. Olsten Corp.*, 110 F.3d 210 (2d Cir.1997).

■ Viewing the evidence in the light most favorable to the Plaintiff, the Court observes that the Plaintiff experienced repeated unwelcome harassment at the hands of Mars, her supervisor throughout her employment. Further, the Plaintiff complained of that harassment to Adchem management as early as August 1993, and repeated those complaints for more than a year before action was finally taken on her complaints in November 1994. Also, although Adchem Vice President Rob Pufahl testified that Adchem lacked any corporate policies for dealing with sexual harassment in 1993 and 1994, he never testified that he was not aware during this period that sexual harassment was unlawful. Moreover, after the Plaintiff returned to the Westbury facility from her transfer to Riverhead, Adchem again placed her, at least indirectly, under the supervision of Mars, thus exposing her to the potential of further harassment. Based on all of this evidence, this Court cannot say that the jury's finding that Adchem was recklessly indifferent to the Plaintiff's right to a workplace free of unlawful harassment is not supported by the record.

Therefore, the Court denies Adchem's motion for judgment as a matter of law vacating the jury's award of punitive damages. Because Adchem does not argue that the amount of punitive damages awarded to the Plaintiff "shocks the conscience," *Luciano*, 110 F.3d at 222, the Court deems that argument waived.

### B. As to the Plaintiff's motion for a new trial on damages

The Plaintiff moves, pursuant to Fed. R.Civ.P. 59(a), for a new trial on damages. The Plaintiff's motion is apparently premised on two grounds: (i) that the Court erroneously prevented the Plaintiff's counsel from referring to the Plaintiff's treating physician in summation, even though he had no intention of mentioning the Plaintiff's irritable bowel syndrome that the Court had held was not caused by the harassment; and (ii) that the Court erred in its jury instruction on punitive damages.

The Plaintiff's first argument is somewhat unclear. In the affirmation supporting the motion, the Plaintiff claims that "During summation plaintiff's counsel was abruptly cut off from mentioning plaintiff's treating physician's name. Plaintiff's counsel had not mentioned irritable bowel syndrome and had no intention of doing so ... The jury was instantaneously ordered by the trial judge that they could not consider the testimony of the treating physician. Yet, defendant's counsel was allowed to capitalize on the testimony of the treating physician and constantly demonize it in his summation." However, in the memorandum of law supporting her motion for a new trial, the Plaintiff contends that the Court's instruction to the jury concerning the Plaintiff's treating physician, Dr. Gallo, confused the jury over whether emotional distress should be addressed in a compensatory or a punitive damage award.

In either event, the Plaintiff's argument is unavailing. To the extent that the Plaintiff alleges that this Court improperly restricted the Plaintiff's counsel's summation, the Court finds no error in its instruction. During the Plaintiff's summation, counsel stated that he wished to point out that Dr. Gallo "diagnosed [the Plaintiff] as suffering from stress." The Court, however, stated that "there is no testimony that Dr. Gallo mentioned anything related to stress in this situation, to this employment environment." This ruling was correct.

Dr. Gallo's testimony mentioned "stress" only twice: once when he was reciting the initial complaints that the Plaintiff presented, and again when he recommended that the Plaintiff seek to "reduce stress." In light of the complete lack of any testimony by Dr. Gallo that he determined the Plaintiff to be suffering from stress related to her working environment, as opposed to any other source, the Court's instruction to the Plaintiff's counsel during summation was correct. In any event, the Court notes that its instruction to the Plaintiff's counsel did not prohibit him from referring to any other part of Dr. Gallo's testimony, nor did Adchem make any significant mention of Dr. Gallo in its summation, other than to indicate that Dr. Gallo suspected the Plaintiff's use of Advil might have contributed to her stomach problems.

To the extent that the Plaintiff's motion contends that the Court's ruling regarding Dr. Gallo's testimony somehow confused the jury into believing that their award for punitive damages would encompass her claims for emotional distress as well, the Court finds no merit in such a claim. Besides being uncertain of precisely how the former is alleged to have caused the latter, the Court finds that the Plaintiff raised no objection to the compensatory damage instruction at either the initial charging conference, or when the charge was actually given to the jury. Thus, the Court finds no error occurred regarding the Plaintiff's summation that warrants a new trial on damages.

 The Plaintiff's second argument, that the Court erred in instructing the jury on punitive damages, is irrelevant. Under 42 U.S.C. § 1981a(b)(1)(3), the combined total of compensatory and punitive damages a Title VII claimant may recover is capped based on the size of the employer. Here, the only evidence in the record of Adchem's size is Pufhal's testimony that Adchem had approximately 140 employees in 1993 and 1994. Accordingly, the maximum amount that the Plaintiff could recover in punitive damages would be $100,000, 42 U.S.C. § 1981a(b)(1)(3)(b), exactly the amount the jury awarded for such damages. Thus, even if the Court had given a more correct jury instruction and the jury had returned a higher punitive damage award, the Court would nevertheless have reduced the award to $100,000. Moreover, as stated above, no punitive damages are available under the Plaintiff's state law claims. *Thoreson, supra.* Therefore, even assuming that the Court gave an incorrect jury instruction on punitive damages, the error is harmless and the Plaintiff received the maximum verdict she can obtain under Title VII.

For these reasons, the Plaintiff's motion for a new trial on damages is denied.

### C. As to the Plaintiff's application for attorney's fees

A prevailing party in a case brought pursuant to Title VII is entitled to an award of reasonable attorney's fees. 42 U.S.C. § 2000e–5(k). Because of the district court's familiarity with the quality of the representation and the extent of the litigation, the decision whether to award fees and the amount of fees awarded are issues generally confined to the sound discretion of the court. *Gierlinger v. Gleason,* 160 F.3d 858, 876 (2d Cir.1998).

The well-known formula for calculating attorney's fees is the "lodestar" method described in *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986). Under this method, the court makes an initial calculation of a lodestar amount by multiplying the number of hours reasonably spent on the litigation by a reasonable hourly rate. *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *LeBlanc–Sternberg v. Fletcher,* 143 F.3d 748, 763–64 (2d Cir. 1998); *Gierlinger,* 160 F.3d at 876; *Luciano v. Olsten Corp.,* 109 F.3d 111 (2d Cir.1997). If the court finds that certain claimed hours are excessive, redundant, or otherwise unnecessary, the court should exclude those hours from its lodestar calculation. *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933; *Luciano,* 109 F.3d at 116.

Once the initial lodestar calculation is made, the court should then consider whether upward or downward adjustments are warranted by factors such as the extent of success in the litigation and the degree of risk associated with the claim. *Hensley*, 461 U.S. at 434 and n. 9, 103 S.Ct. 1933, *citing Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–719 (5th Cir.1974).

Adchem first contests whether the Plaintiff is a "prevailing party," arguing that the jury's verdict did not find Adchem directly guilty of any act, but merely held it vicariously liable for Mars' harassment. However, in *Burlington Industries v. Ellerth*, 524 U.S. 742, 759, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), the Supreme Court explained that an employer is directly liable for its own negligence in failing to stop known workplace sexual harassment. Thus, the jury's finding in favor of the Plaintiff on the hostile environment claim is a finding of direct liability against Adchem. Moreover, in light of the jury's award of punitive damages to the Plaintiff, there can be no argument that she has received an enforceable judgment against Adchem, thus satisfying the prevailing party test set forth in *Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). Therefore, the Court finds that the Plaintiff is a prevailing party and entitled to an award of reasonable attorney's fees.

However, in making the initial lodestar calculation, the Court finds that the hourly rates requested by the Plaintiff's counsel are excessive. The rate to be used in the calculation must be the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Luciano*, 109 F.3d at 111, *citing Blum v. Stenson*, 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). The Second Circuit has recently held that rates of $200 for partners, $135 for associates, and $50 for paralegals are reasonable hourly rates for legal services in the Eastern District. *Savino v. Computer Credit, Inc.*, 164 F.3d

81, 87 (2d. Cir.1998); *Luciano*, 109 F.3d at 111–112 (collecting cases); *Cruz v. Local Union No. 3, Int'l. Brotherhood of Electrical Workers*, 34 F.3d 1148, 1160 (2d Cir.1994). Therefore, the Court will apply those rates in making the initial lodestar calculation.

Next, the Court must determine the number of hours that were reasonably expended in this litigation. Upon reviewing the time sheets submitted by Plaintiff's counsel, and based upon this Court's own knowledge of the issues tried in the case, the Court concludes that many of the hours sought by the Plaintiff are unnecessary and excessive. For example, three attorneys were present at the Plaintiff's counsel table throughout most of the trial. Given that this was a fairly simple case, involving no novel issues of law or complex documentary evidence, the Court finds that overstaffing of the case by the Plaintiff to be unreasonable. At most, trial of the Plaintiff's claims required the services of one partner and one associate, and thus, the Plaintiff's claimed trial hours (including jury selection) will be reduced to 65 hours each for one partner and one associate. Given the lack of complexity of the issues for trial, the Court finds that the additional 135 hours claimed by the Plaintiff for "trial preparation" are also excessive, and the Court reduces those hours to 60 hours at a partner rate and an additional 25 hours at an associate rate. The Court finds the remaining hours claimed by the Plaintiff's counsel to be generally reasonable.

Based on these findings, the Court determines that the initial lodestar calculation should be as follows:

| | | | |
|---|---|---|---|
| Pre-trial: | 18.8 hours at $50 per hour (S.Stewart) | = | $940 |
| | 16 hours at $135 per hour (T. Eskridge) | = | $2160 |
| | 137.5 hours at $200 per hour (C. Stewart, R. Bielski, R. Iaannacone) | = | $27,470 |
| Trial prep.: | 60 hours at $200 and 25 hours at $135 | = | $15,375 |
| Trial time: | 65 hours at $200 and 65 hours at $135 | = | $21,775 |

In addition, the Plaintiff's application contains 33.65 hours attributed to a "T.A."

who is not identified. However, the task descriptions for this individual indicate paralegal-type work, and thus, an additional 33.65 hours at $50 per hour will be included in the initial calculation. Therefore, the total initial lodestar figure is $69,402.50.

However, as the Supreme Court in *Hensley* observed, calculation of the lodestar figure "does not end the inquiry." *Hensley*, 461 U.S. at 434 and n. 9, 103 S.Ct. 1933. In its opposition to the Plaintiff's request for fees, Adchem points out that the Plaintiff achieved limited success on her claims. Specifically, the jury found against her on her retaliation and *quid pro quo* harassment claims, and found that she suffered no compensable damages resulting from the hostile environment at Adchem. The Court agrees that a reduction of the lodestar figure is warranted in light of the Plaintiff's partial success. Nevertheless, the Court also observes that the Plaintiff was successful in her ultimate claim that Adchem was responsible for the maintenance of a hostile working environment, and, in light of the facts presented, recovered a very generous punitive damage award. Therefore, the Court finds that a general lodestar reduction of 25% is appropriate to reflect the partial lack of success achieved by the Plaintiff. *See e.g. Quinn v. Nassau County*, 75 F.Supp.2d 74, 79 (E.D.N.Y.1999) (10% reduction in case involving a much greater degree of success). In addition, the Court awards the Plaintiff an additional 10 hours at $200 per hour for time spent opposing Adchem's post-trial motions and preparing the application for attorney's fees.

Therefore, the Court finds that the Plaintiff should be awarded attorney's fees in the total sum of $54,052.

As to the Plaintiff's requested disbursements and expenses, only those costs enumerated under 28 U.S.C. § 1920 may be taxed. Parties can recover costs for deposition transcripts under 28 U.S.C. § 1920(2) when the depositions appear to have been reasonably necessary to the litigation at the time they were taken, even if those transcripts are not used during trial. *Sim v. New York Mailers' Union No. 6*, 1999 WL 674447 (S.D.N.Y.1999). As Adchem does not contend that the five depositions taken in this case are non-taxable, the Court grants the Plaintiff's request for the transcript costs. However, the Plaintiff's unitemized request for $1,200 in "photocopies" is neither supported by receipts nor reasonable. 28 U.S.C. § 1920(4) entitles a party seeking costs to recover costs of photocopying "papers necessarily obtained for use in the case." Here, the Plaintiff offered only a handful of exhibits at trial, and thus, the Court estimates that the total cost of photocopying the documents necessarily used in this case is no more than $250. *United States v. Merritt Meridian Constr. Corp.*, 95 F.3d 153, 173 (2d Cir.1996) (reduction of claim for photocopying where costs were not itemized). In addition, the Court denies the Plaintiff's request for a $300 "witness fee" for her expert, Dr. Gallo. Expert witness fees may be taxed only where the expert is appointed by the court. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 442, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987).

Therefore, the Plaintiff is awarded costs in the amount of $ 2,026.

### CONCLUSION

For the foregoing reasons, Adchem's motion for judgment as a matter of law dismissing the hostile environment claim and vacating the jury's award of punitive damages is DENIED. The Plaintiff's motion for a new trial on the issue of damages is DENIED. Based on the jury's verdict, the Clerk of the Court is directed to enter a judgment in favor of the Plaintiff, Tonia Cush–Crawford, against Adchem Corp. in the amount of $ 100,000, together with $54,052 in attorney's fees pursuant to 42 U.S.C. § 2000e–5(k) and $2,026 in costs. The Clerk is directed to close this case.

SO ORDERED