USCA1 Opinion

 

 August 21, 1995 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 95-1168 DONALD HOGAN, Plaintiff, Appellee, v. BANGOR AND AROOSTOOK RAILROAD COMPANY, Defendant, Appellant. ____________________ No. 95-1169 DONALD HOGAN, Plaintiff, Appellant, v. BANGOR AND AROOSTOOK RAILROAD COMPANY, Defendant, Appellee. ____________________ ERRATA SHEET The opinion of this court issued on August 18, 1995 is amended as follows: On the cover sheet, substitute "On Appeals" for "On Appeal". On the cover sheet, substitute "for Bangor and Aroostook Railroad Company" for "for appellant". On the cover sheet, substitute "for Donald Hogan" for "for appellee". UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 95-1168 DONALD HOGAN, Plaintiff, Appellee, v. BANGOR AND AROOSTOOK RAILROAD COMPANY, Defendant, Appellant. ____________________ No. 95-1169 DONALD HOGAN, Plaintiff, Appellant, v. BANGOR AND AROOSTOOK RAILROAD COMPANY, Defendant, Appellee. ____________________ ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Eugene W. Beaulieu, U.S. Magistrate Judge] _____________________ ____________________ Before Selya, Cyr, and Lynch, Circuit Judges. ______________ ____________________ James E. Howard, with whom M. Katherine Willard and Phoebe S. ________________ _____________________ __________ Gallagher were on brief, for appellant.  _________ William J. Kelleher for appellee. ___________________ ____________________ August 18, 1995 ____________________ LYNCH, Circuit Judge. An employer's refusal to let LYNCH, Circuit Judge. _____________ an employee return to work out of a difference of medical views as to whether the employee was fit gave rise to this discrimination action brought under the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12101 et seq., and the __ ____ Maine Human Rights Act ("MHRA"), Me. Rev. Stat. Ann. tit. 5, 4561 et seq. (West 1989). A jury verdict in favor of the __ ____ plaintiff Donald Hogan of $400,000, reduced by the district court to $200,000, gives rise to a case of first impression in this Circuit on the meaning of the cap on ADA damages imposed by 42 U.S.C. 1981a(b)(3). Because the language of the statute is clear, the reduction of the jury award of damages to $200,000 is affirmed. The challenges of the defendant Bangor and Aroostook Railroad ("BAR") to the sufficiency of the evidence to support the $200,000 award and to the additional back pay award of $70,684.29 are rejected, as is Hogan's challenge to the denial of his motion for prejudgment interest. Hogan, a trackman for BAR since 1970, suffered a collapsed lung while at work in February 1992. After surgery to remove a lobe of his lung, Hogan was told on May 20, 1992 by Dr. Cabot that he was fit to return to work. Dr. Sagall, BAR's Chief Medical Officer and a family practitioner, examined Hogan and, based on what he professed to be abnormal pulmonary function tests, concluded Hogan was not able to return to his physically demanding job. Dr. Sagall believed that Hogan suffered from bullous disease and emphysema, and that this increased Hogan's risk of lung collapse. Despite mounting medical evidence to the contrary, Dr. Sagall clung to his belief for more than two and a half years. Hogan's physician, Dr. Cabot, based on later examination again repeated that Hogan was fit. Dr. Sagall, feeling Dr. Cabot did not understand how strenuous Hogan's job was, again told Hogan he could not return to work. Dr. Sagall, however, failed to discuss Hogan with Dr. Cabot, failed to ascertain if Dr. Cabot did misunderstand the nature of the job, and failed to have x-rays done which would have revealed whether Hogan in fact suffered from emphysema and bullous disease. Indeed, Dr. Sagall did not request x-rays until January 1993, after Hogan had brought suit, when directed to do so by the Railway Retirement Board. In addition, CAT-scan results available to Dr. Sagall in March 1992 would have disclosed, if reviewed, that Hogan did not suffer from emphysema. By January 1993 BAR had been given an opinion from an acknowledged pulmonary specialist, Dr. Oldenburg, that Hogan could return to work. This opinion fared no better in swaying BAR than did Dr. Cabot's opinion. Dr. Sagall again felt no need to contact Dr. Oldenburg and discuss Hogan. -3- 3 In October 1993, BAR requested that Hogan undergo a Functional Capacity Test prepared specifically for him. There was no guarantee that if Hogan passed the test he would be allowed to return to work. Hogan refused to take the test.  In November 1994, after trial had started and after examinations by both Dr. Oldenburg and Dr. Sagall, BAR reinstated Hogan to his job as trackman. In the period that Hogan was kept out of work despite his doctors' opinions that he was fit, Hogan and his family were forced to live on a fraction of his former income as family breadwinner. Dr. Sagall's repeated statements to him that he was disabled and the disability was probably permanent exacerbated Hogan's depressed state. The jury found in Hogan's favor under the ADA and awarded him $200,000 each in punitive and in compensatory damages. The district court then reduced Hogan's award to $200,000 ($100,000 compensatory and $100,000 punitive) pursuant to the statutory cap imposed by 42 U.S.C.  1981a(b)(3). In addition, Hogan was awarded $70,684.29 in back pay. As an alternative recovery under the MHRA, the district court awarded Hogan the same back pay award of $70,684.29 plus $5,000 in civil penal damages.  Hoping to retain the $400,000 award, Hogan argues, based solely on an improbable reading of the statute, that 42 -4- 4 U.S.C. 1981a(b)(3) imposes a cap of $200,000 on each type ____ of damage award, and not on the sum of the two. The language ___ of 42 U.S.C. 1981a(b)(3) provides: The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed . . . $200,000. The district court correctly read the provision as "[t]he sum of the amount of compensatory damages . . . and the amount of punitive damages . . . shall not exceed . . . $200,000." The only other court to have considered the issue thus far has reached the same conclusion. See U.S. Equal ___ ___________ Employment Opportunity Commission v. AIC Security _____________________________________ _______________ Investigations, Ltd., 823 F. Supp. 571, 576 (N.D. Ill. 1993), ____________________ rev'd in part on other grounds, 55 F.3d 1276 (7th Cir. 1995). ______________________________ The statute is clear on its face that the sum of compensatory damages (including its various components) and punitive damages shall not exceed $200,000. "The task of statutory interpretation begins with the language of the statute, and statutory language must be accorded its ordinary meaning." Gately v. Commonwealth of Massachusetts, 2 F.3d ______ _____________________________ 1221, 1228 (1st Cir. 1993), cert. denied, 114 S. Ct. 1832 ____________ (1994). "[W]hen a statute speaks with clarity to an issue judicial inquiry into the statute's meaning, in all but the -5- 5 most extraordinary circumstance, is finished." Estate of _________ Cowart v. Nicklos Drilling Co., 112 S. Ct. 2589, 2594 (1992). ______ ____________________ The reduction of the jury award from $200,000 to $100,000 on each type of damage award was done by the district court simply to accommodate the cap. The original jury award of $200,000 for compensatory damages alone would also satisfy the cap. Exercising our authority under 28 U.S.C. 2106, see United States v. Garafano, No. 95-1127, ___ _____________ ________ slip op. at 8 (1st Cir. Aug. 7, 1995), we reinstate the jury's award of $200,000 in compensatory damages, for which there is sufficient evidence as described below, and vacate the district court's award of $100,000 in punitive damages, thus obviating the need to reach the question of punitive damages.  BAR argues that the jury's award of compensatory damages was excessive and should be reduced.1 An award of compensatory damages is excessive if it exceeds a rational appraisal of the damages actually incurred. See Linn v. ___ ____ Andover Newton Theological School, Inc., 874 F.2d 1, 6 (1st ________________________________________ Cir. 1989). "Generousness of a jury's award does not alone justify an appellate court in setting it aside." Id. ___  ____________________ 1. BAR argues that the reduced jury award of $100,000 in compensatory damages was excessive. Since we have reinstated the full jury award of $200,000 on compensatory damages, we treat BAR's arguments on the $100,000 of compensatory damages as applying to the full amount. -6- 6 (quoting Kolb v. Goldring, Inc., 694 F.2d 869, 871 (1st Cir. ____ ______________ 1982)).  BAR argues Hogan did not prove emotional distress sufficient to warrant the damages award. The jury, however, awarded compensatory damages not only for emotional distress, but also for inconvenience, mental anguish, and loss of enjoyment of life. Until his reinstatement in October 1994, Hogan was repeatedly and incorrectly kept from a job he had held for twenty-two years. During the almost two and a half years he was kept out of work, Hogan, who was married and had two young children, saw his annual income of $28,000 and benefits plummet to $13,000 with no benefits. His wife, who had previously cared for their children, went to work in a shoe factory in order for the family to have medical insurance. As the district court noted, they were in "a difficult financial situation." The company doctor had told Hogan he was "disabled" and that it was highly unlikely he would ever be able to return to physical labor, the job he had had most of his adult life. Hogan, very upset as a result, became depressed, withdrawn, and gave up his usual activities. His pulmonary specialist described him as "quite depressed." The evidence was adequate to support the award. See Bolden v. Southeastern Pennsylvania Transportation ___ ______ ___________________________________________ Authority, 21 F.3d 29, 33 (3d Cir. 1994). _________ -7- 7 BAR also argues that Hogan's refusal to take a Functional Capacity Evaluation Test ("FCE") specially designed for him, in September 1993, constituted a failure to mitigate back pay damages, and that the district court erred in not so ruling. An employee's rejection of an employer's unconditional job offer does end the accrual of the employer's potential back pay liability, absent special circumstances. Ford Motor Co. v. Equal Employment ________________ _________________ Opportunity Commission, 458 U.S. 219, 241 (1982); Morris v. ______________________ ______ American National Can Corporation, 952 F.2d 200, 202 (8th ___________________________________ Cir. 1991). If Hogan had taken and passed the FCE, he still had to proceed to further tests and if he cleared those he was required to obtain a clearance from Dr. Sagall. BAR's argument fails because it was by no means clear that Hogan was to be reinstated to his job upon completion of the FCE. BAR did not meet its burden of showing it made an unconditional job offer, much less its burden of showing that the district court (which believed BAR's suggestion that Hogan undertake the testing regime was a litigation tactic, and untimely to boot) erred. In the absence of a concrete offer of reinstatement, the period of back pay accrual does not end. Hogan finally argues that the district court abused its discretion in not awarding him prejudgment interest on his back pay award under federal law. Whether prejudgment -8- 8 interest is needed to make a plaintiff whole is within the discretion of the district court. See Conway v. Electro ___ ______ _______ Switch Corp., 825 F.2d 593, 602 (1st Cir. 1987). The _____________ district court did not abuse its discretion in not awarding Hogan prejudgment interest here where the award of damages is almost three times the size of the back pay award. We do not reach Hogan's claim of prejudgment interest under the MHRA because Hogan admits he failed to seek such interest from the district court, and he may not do so initially on appeal. See, e.g., CMM Cable Rep., Inc. v. ___ ____ _____________________ Ocean Coast Properties. Inc., 48 F.3d 618, 622 (1st Cir. ______________________________ 1995) ("A party who neglects to ask the trial court for relief that it might reasonably have thought would be available is not entitled to importune the court of appeals to grant that relief."). We vacate the district court's award of $100,000 in punitive damages, reinstate the jury's award of $200,000 in compensatory damages, and affirm the judgment on all other issues.  No costs to either party. -9- 9