Boisvert v. Sears                    CV-96-495-M    07/27/98

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Jeanie T. Boisvert,
      Plaintiff

      v.                                        Civil No. 96-495-M

Sears, Roebuck & Co.,
      Defendant


**O R D E R**


     Sears moves for a new trial pursuant to Federal Rule of

Civil Procedure 59(a), and, in the alternative, for remittitur of

the jury's compensatory damages award.[1]  Boisvert objects.  For

the reasons that follow, Sears's motion is denied.

     Rule 59(a) provides, in pertinent part, that "[a] new trial

may be granted to all or any of the parties and on all or part of

the issues (1) in an action in which there has been a trial

by jury, for any of the reasons for which new trials have

heretofore been granted in actions at law in the courts of the

United States . . . ."  Grounds for a new trial include a verdict

that is against the great weight of the evidence, or is

excessive, or a verdict that is so mistaken as to constitute a

miscarriage of justice, or that the trial was not fair to the

moving party due to substantial errors in the admission of

evidence.  Gasperini v. Center for Humanities, Inc., 116 S.Ct.

2211, 2222 (1996); Montgomery Ward & Co. v. Duncan, 311 U.S. 243,

_____

     [1]  Sears also requested a hearing which was held on June 29,
1998.

251 (1940); <u>Transamerica Premier Ins. Co. v. Ober</u>, 107 F.3d 925, 929 (1st Cir. 1997). A trial court also has discretion "to order remittitur of the award in light of the evidence adduced at trial." <u>Kelley v. Airborne Freight Corp.</u>, 140 F.3d 335, 355 (1st Cir. 1998). But when substantial evidence exists to support a verdict, only a very unusual case will warrant the court's exercise of discretion to grant a new trial. <u>See</u> <u>Fernandez v. Corporacion Insular de Seguros</u>, 79 F.3d 207, 211 (1st Cir. 1996).

## A.    <u>Evidentiary Issue</u>

Sears first argues that the court improperly limited its cross examination of Jeanie Boisvert by not permitting questions related to other Sears employees who left as a result of the reorganization in February 1993. Sears says that such questions were "necessary" in order to show Boisvert's knowledge that other Sears employees, who were male, were also adversely affected by the reorganization, and, thus, Boisvert could not have believed she was "singled out because of her gender." Boisvert contends that Sears did not preserve the issue raised here through a proper objection at trial,[2] but also argues that the questioning was properly limited to avoid wasting time.

---

[2] Neither party has cited to the record to show whether or not Sears properly preserved this issue for post trial review, nor has Boisvert cited legal authority supporting her view of the standard applicable in determining whether an evidentiary issue is preserved. Given the parties' minimal attention to whether the issue was properly preserved, the court will assume, for purposes of this motion only, that it was preserved for consideration.

2

Boisvert's gender discrimination claim based on Sears's treatment of her during its reorganization was dismissed, as barred by Title VII's timely filing requirements. Therefore, Sears's conduct during its reorganization was not particularly relevant to Boisvert's actionable claim — gender discrimination by Sears when it refused to rehire her in August. (Boisvert's subjective belief that she was the subject of gender discrimination during the reorganization process is even less relevant to her actionable claim.) Evidence related to the reorganization was permitted at trial only to provide background, and context in which Sears's actionable rehiring decision could be considered. But even if Sears's questioning was improperly limited, the subject was tangential rather than essential to Boisvert's actual claim, and, therefore, would not in any event constitute a substantial error requiring a new trial.

## B.  **Punitive Damages**

Sears also objected to <u>any</u> jury instruction on punitive damages, asserting that punitive damages were not appropriate in this case as a matter of law.[3] Sears again argues that to justify an award of punitive damages, a plaintiff must prove malicious conduct beyond intentional discrimination, and, under that standard, punitive damages were unavailable as a matter of

---

[3] Sears did not object at trial, and does not object now, to the language of the punitive damages jury instruction, but instead contends that <u>no</u> punitive damages instruction should have been given.

3

law in this case.  In support of its argument, Sears relies on McMillan v. Massachusetts Soc'y for the Prevention of Cruelty to Animals, 140 F.3d 288 (1ˢᵗ Cir. 1998).

In McMillan, the court considered the standard for punitive damages under Massachusetts law and concluded "nowhere does Massachusetts law state that a finding of intentional discrimination necessarily justifies an award of punitive damages."  Id. at 306.  The court then said "above the inquiry for finding intent, the jury had to conduct a second inquiry to determine whether defendants' intentional conduct was egregious enough for an award of punitive damages."  Id.  Based upon the circumstances presented in that case, the appeals court affirmed the jury's finding of discrimination, under Massachusetts law, but set aside the punitive damages award on grounds that the conduct at issue did not warrant punishment or deterrence beyond the award of compensatory damages.  Id.  To the extent the standard for punitive damages under Massachusetts law, as applied in McMillan, differs from the federal standard, applicable in this circuit in Title VII cases, it is of no consequence.

The standard for a permissive award of punitive damages under federal law, in the First Circuit, requires only a finding of intentional discrimination.  "'This circuit has held that under federal law the evidence of intent that is necessary to support a punitive damages award 'is the same [evidence of] "intent" that is required for a finding of discrimination in the first place.'"  Criado v. IBM Corp., — F.3d — , 1998 WL 282836 *8

4

(1st Cir. 1998) (quoting <u>Dichner v. Liberty Travel</u>, 141 F.3d 24, 33-34 (1st Cir. 1998)). Therefore, if the evidence was sufficient to support the jury's finding of intentional gender discrimination in this case, it was also sufficient to warrant an instruction on punitive damages.

Sears also objects to testimony by Boisvert's financial expert witness concerning Sears's net worth. Sears argues that Dr. McCausland's testimony that Sears was a corporation worth $17,000,000,000 was prejudicial. Sears does not seem to argue that a corporate defendant's net worth is irrelevant to the issue of punitive damages, nor does it dispute the validity of the information. Instead, Sears seems to contend that the "big number" might have improperly influenced the jury to award punitive damages based on Sears's conduct during the reorganization process rather than for its discrimination in refusing to rehire Boisvert.

The jury was instructed, without objection, on the elements of Boisvert's discrimination claim based on Sears's decision not to rehire her. The jury was also instructed that Boisvert had no claim based upon Sears's conduct during the reorganization:

> You have heard testimony about Sears's reorganization
> and about the attendant circumstances when Ms. Boisvert
> and other Sears employees were laid off in February of
> 1993. Ms. Boisvert does not have a claim based on the
> loss of her job in February, and Sears cannot be held
> liable in this suit for letting her go or for any other
> decisions made at that time. The information about
> reorganization and related employment decisions, such
> as the lay offs, simply provides background information
> related to Ms. Boisvert's later job application and
> Sears's subsequent decision not to rehire her in
> August.

5

In the punitive damages instruction, the jury was told that they could, but were not required to, award punitive damages if they found in Boisvert's favor on her claim that Sears discriminated against her in failing to rehire her and found Sears's conduct deserved punishment or deterrence. Sears did not object at trial that the instructions, as given, failed to limit the jury's consideration to Sears's conduct during the rehiring decision.

The court ordinarily presumes that a jury understands, follows, and bases its verdict on the instructions it is given. See, e.g., Simon v. Navon, 71 F.3d 9, 19 (1st Cir. 1995); United States v. Rullan-Rivera, 60 F.3d 16, 18 (1st Cir. 1995); Pinkham v. Maine Cent. R.R., 874 F.2d 875, 882 (1st Cir. 1989). Sears has offered nothing in support of its motion to rebut the presumption in favor of the instructions or to show that the instructions were legally insufficient. Thus, no miscarriage of justice can be found based upon evidence admitted for its relevance in determining whether to award punitive damages, or how much should be awarded.

## C.  **Weight of the Evidence**

Sears asserts that the jury's verdict in Boisvert's favor was against the weight of the evidence. Sears argues that the great weight of the evidence presented at trial supports the truth of David Emond's claimed reasons for not rehiring Boisvert, and shows that Emond did not discriminate against women. While Boisvert did seem to lack "smoking gun" evidence of gender

6

discrimination against her, the court is not persuaded that the verdict is against the weight of the evidence or that it constitutes a miscarriage of justice.

Sears first contends that substantial evidence at trial supported Emond's stated legitimate reasons for not rehiring Boisvert. Emond testified that he did not rehire Boisvert because of her poor work performance and her difficulty in handling necessary paperwork. Other Sears witnesses (in fact virtually all others) testified that Boisvert's performance was quite satisfactory and some found her an excellent employee. Sears also argues that the evidence showed that paperwork required of the new consumer service consultant ("CSC") position legitimately excluded Boisvert from the job, but does not point to any evidence at trial that proved that any previous paperwork problems were either caused by Boisvert or were her responsibility, or that her contemporaneous evaluations reflected deficiencies in that area. In addition, Sears does not explain why Cheryl Luzzi was hired for an automotive CSC position with zero prior experience in a Sears automotive center or any other automotive shop, and no experience with processing the supposedly problematic paperwork, and expressed misgivings about taking on a job in the automotive field.

Sears also points to testimony supporting Emond's self-professed policy of not rehiring employees laid off in the reorganization for morale reasons. Sears says that Aurie Sullivan testified morale in the automotive center was poor for a

7

year after the reorganization, and no doubt it was for many obvious reasons. Sears apparently believes that Sullivan's testimony explains the decision to rehire another employee, a male, who was laid off during the reorganization. But the only employee rehired after reorganization was a man, and he was hired about a year after Boisvert applied.

The jury was of course free to believe or disbelieve Emond and Sullivan as both were interested witnesses. See Collazo-Santiago v. Toyota Motor Corp., — F.3d —, 1998 WL 363856 *5 (1st Cir. 1998). Emond told Virginia Frain to leave Boisvert a message, in response to Boisvert's August application, to the effect that although no positions were then available (despite Sears's running advertisements for applicants at that time), she would be considered for employment during the next round of openings. Emond's message, delivered by Frain, no doubt undermined his credibility with respect to his professed reasons for not rehiring Boisvert. If he were acting based on the reasons given at trial, he could have asked Frain to tell Boisvert that she was not going to be considered for a CSC position either because of her prior performance or because of his policy of not rehiring employees laid off during the reorganization. Instead, the jury could reasonably have found that Emond asked Frain to lie, or caused her to lie without her knowing it, to give Boisvert false hope that she would indeed still be considered for a CSC position.

Sears also argues that Emond's history at Sears demonstrated that he has worked with women without any problems and that he has hired women, and thus did not engage in gender discrimination. Sears also points to Emond's and Sears's hiring practices since Boisvert's experience in August 1993. Again, the jury was free to accept or reject the testimony by Emond and other Sears employees, all of whom were decidedly interested in the outcome of the case. Similarly, the jury could have accepted or rejected all or part of Sue Bucker's negative testimony about Emond's attitude toward female employees, particularly strong and successful female employees.

Based on the conflicting evidence at trial, the jury could reasonably have found that Boisvert was highly qualified for the CSC position for which she applied, that CSC positions were in fact available when she applied, and that male applicants no more qualified than she were hired. The jury could also have reasonably found that Emond lied about his stated reasons for not rehiring Boisvert.[4] Those circumstances in combination would allow the jury to draw the reasonable and plausible inference that Emond's stated reasons were mere pretext for discrimination

_____

[4] The jury might also, among other things, have believed Jeanie Boisvert's accounts of her experiences with David Emond, credited Sue Bucker's testimony that Emond treated her badly while she worked with him and treated women employees badly, and might have found Emond's references to Boisvert as "the Queen bee" to reveal his gender bias. The jury might also have found that Emond's and Sears's recent efforts to accommodate women were the result of Boisvert's suit rather than establishing the absence of gender bias in hiring.

against Boisvert. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993).

Thus, although a close factual case on the issue of gender discrimination, the record does not show that the jury's verdict was against the weight of the evidence presented at trial or that the verdict in Boisvert's favor was a miscarriage of justice.

**D. Remittitur of Compensatory Damages Award**

In the alternative, Sears asks the court to order remittitur of the jury's compensatory damages award of $300,000. Boisvert's claim for compensatory damages pursuant to 42 U.S.C.A. 1981a(b)(3) included compensation for "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." Sears bears a heavy burden to convince the court that the jury's award of noneconomic damages is "grossly excessive, inordinate, shocking to the conscience of the court or so high that it would be a denial of justice to permit it to stand." Havinga v. Crowley Towing and Transp. Co., 24 F.3d 1480, 1484 (1st Cir. 1994) (quotation omitted). The jury's generosity or even extravagance and the trial court's contrary opinion of an appropriate award, if it had been the factfinder, are not grounds to overturn the jury's decision. Id.; see also Dopp v. Pritzker, 38 F.3d 1239, 1249 (1st Cir. 1994); Ruiz v. Gonzalez Caraballo, 929 F.2d 31, 34 (1st Cir. 1991).

10

Boisvert claimed compensatory damages for her noneconomic, intangible losses based on her embarrassment and humiliation in the unnecessary job application process she was put through; her loss of self-confidence in her ability to work in the automotive field due to Emond's refusal to rehire her; her realization that despite her thirteen successful years at Sears and her dedicated loyalty to her employer, her work was seen as "just a job" and not a career; and her resulting loss of trust in employers and supervisors. Despite the potentially damaging effects of these experiences, Boisvert fortunately found a new job within a few months of her rejection by Sears and suffered little economic loss. She continues to work for that employer (Media One) and is happy in her work. Boisvert has also been able to cope with the emotional effects of her experiences with Sears without medical or psychological services and without impact on other facets of her life.

Thus, based on the evidence at trial pertaining to Boisvert's noneconomic losses, the jury's award of $300,000 in compensatory damages seems at least generous. Cf., e.g., Hogan v. Bangor and Aroostook R. Co., 61 F.3d 1034, 1037-38 (1st Cir. 1995) (jury awarded $200,000 in compensatory damages to plaintiff who was kept out of work in violation of the Americans with Disabilities Act for two and a half years, who suffered a difficult financial situation, became depressed and withdrawn as confirmed by his treating physician, and gave up his usual activities). Sears cites a battery of cases in which remittitur

11

of compensatory damages was ordered in discrimination cases with apparently more evidence of serious harm. See also, e.g., Delli Santi v. CNA Ins. Cos., 88 F.3d 192, 205-06 (3d Cir. 1996) ($300,000 compensatory damage award on successful retaliation claim remitted to $5,000 for plaintiff who was fired after thirty-six years with company on a trumped-up charge of expense account inflation [stealing] and claimed noneconomic harm based on humiliation and emotional damage from loss of reputation and resulting problems seeking another job).

In this case, however, the statutory cap pursuant to section 1981a(b)(3)(d) effectively imposed remittitur of the jury's damages award. The jury's punitive damage award of $700,000 and compensatory damage award of $300,000 were together capped at $300,000. The relative amounts have not been allocated. If, hypothetically, amounts were to be allocated between compensatory and punitive damages in the same proportion to the total awarded by the jury, there would then be an allocated award of the capped amount of $90,000 in compensatory damages and $210,000 in punitive damages. An award of $90,000 in compensatory damages, while arguably generous, would hardly be so excessive as to shock the conscience. See Hogan, 61 F.3d at 1037.

Sears has not asked for remittitur of the capped damages or for allocation of the awards under the cap. Even if the damages awards were not allocated proportionately, any combination within the capped amount would reduce Boisvert's recoverable compensatory damages below the jury's award, and an appropriate

12

amount certainly could be allocated to avoid a need for remittitur. The remainder of the cap would then be filled by the jury's $700,000 punitive damages award.[5] Accordingly, under all the circumstances, the damages, as capped, are not excessive and do not warrant an order of remittitur.

## Conclusion

For the foregoing reasons, defendant's motion for a new trial or remittitur (document no. 82) is denied.

SO ORDERED.

_____
Steven J. McAuliffe
United States District Judge

July 27, 1998

cc:  Heather M. Burns, Esq.
     Byry D. Kennedy, Esq.
     Joan Ackerstein, Esq.

---

[5]  Sears has not moved for remittitur of the punitive damages award.

13