**Migdalia Rodriguez TORRES Plaintiff**

v.

**CARIBBEAN FORMS MANUFACTURER, et al. Defendants**

**No. CIV.00–2149(SEC).**

United States District Court, D. Puerto Rico.

Oct. 2, 2003.

Carlos Rodriguez–Garcia, Esq., San Juan, PR, for Plaintiff.

Raul E. Bandas–Del–Pilar, Esq., Humberto S. Garcia, Esq., U.S. Attorney's Office, Torre Chardon, John F. Nevarez, San Juan, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

The parties in the above-captioned case have filed post-judgment motions requesting that the Court amend or alter the judgment entered following a jury trial. Plaintiffs seek amendment of the judgment to include doubling of the damages under Law No. 69 of July 6, 1985 (Law 69), 29

P.R. Laws Ann. §§ 1321 *et seq.*, and Law No. 100 of June 30, 1959 (Law 100), as amended, P.R. Laws Ann. §§ 146 *et seq.*, front pay, and interests on the damage award (**Docket # 106**). On the other hand, Defendants have renewed their request for judgment as a matter of law under Fed.R.Civ.P. 50, and have also moved for a new trial (**Docket # 108**). In the alternative, Defendants seek amendment of the judgment to reduce the damages awarded under Title VII of the Civil Rights Act (Title VII), 42 U.S.C. §§ 2000e *et seq.*, pursuant to the statutory cap, and eliminate the damages awarded under Laws 69 and 100, and Article 1802 of the Puerto Rico Civil Code (Article 1802), 31 P.R. Laws Ann. § 5141, for several reasons. Defendant has also filed an opposition to Plaintiffs' motion to amend the judgment (Docket # 110). On the other hand, Plaintiffs have failed to file any opposition to Defendants' motion (or a reply to Defendants' opposition to their motion) by the extended deadline of September 18, 2003. Having reviewed the parties' arguments, as well as the relevant case law, the parties' motions will be **GRANTED in part and DENIED in part**, as further explained below.

### Title VII Claim

Defendant first moves for judgment as a matter of law on the Title VII claim for discrimination based on gender, arguing that Plaintiff failed to meet the *prima facie* standard set out in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). On the other hand, Plaintiff pointed out during arguments on the Rule 50 motion that direct evidence of discrimination was presented at trial and, as such, the *McDonnell Douglas prima facie* standard is inapplicable to the case at bar.

Under Fed.R.Civ.P. 50, the Court may set aside a jury's verdict and issue a different judgment "only in those instances where, after having examined the evidence as well as all permissible inferences drawn therefrom in the light most favorable to non-movant, the court finds that a reasonable jury could not render a verdict in that party's favor." *Irvine v. Murad Skin Research Laboratories, Inc.*, 194 F.3d 313, 316 (1st Cir.1999). In doing this analysis, the Court "may not take into consideration the credibility of witnesses, resolve conflicts in testimony, or in any other manner weigh the evidence." *Alvarez–Fonseca v. Pepsi Cola of Puerto Rico Bottling Company*, 152 F.3d 17, 23 (1st Cir.1998). For a non-movant party to survive a Rule 50 motion, it must have introduced during trial sufficiently adequate evidence so the jury could have concluded the plausibility of the particular fact in issue. "Thus, in order to support a jury finding on such an issue, the evidence presented must make the existence of the fact to be inferred more probable than its non-existence." *Id.* at 24.

A plaintiff alleging disparate treatment under a statute like the ADEA usually proceeds by means of the familiar framework engendered in *McDonnell Douglas*, 411 U.S. at 802–05, 93 S.Ct. 1817. Under said framework, the burden of persuasion remains with the plaintiff throughout the case. *See Fernandes v. Costa Bros. Masonry*, 199 F.3d 572, 581 (1st Cir.1999). In some situations, however, a plaintiff may be entitled to use an approach that relieves her of this unremitting burden of persuasion. *Febres v. Challenger Caribbean Corp.*, 214 F.3d 57, 59–61 (1st Cir.2000). The key that unlocks this door is the existence of direct evidence that a proscribed factor (such as age, gender, race, or national origin) played a motivating part in the disputed employment decision. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 276–77, 109 S.Ct. 1775,

104 L.Ed.2d 268 (1989) (O'Connor, J., concurring); *Fernandes,* 199 F.3d at 580. The *McDonnell Douglas* test, then, only applies in cases where there is no evidence of direct discrimination. *Smith v. F.W. Morse & Co.,* 76 F.3d 413 (1st Cir.1996).

■ Plaintiff argued that this is a case of direct evidence, and that *McDonnell Douglas* is, therefore, inapplicable. In particular, Plaintiff presented evidence that Defendant Carlos Restrepo, Plaintiff Migdalia Rodríguez Torres's supervisor, and a person directly involved in the decision process regarding Plaintiff's employment, made several derogatory comments referring to Plaintiff's age and gender. Plaintiff presented proof that Defendant Restrepo called Defendant an old crazy woman, and told her that he believed that women think with their feet. Defendant Restrepo also allegedly told Plaintiff that women are good for nothing and that that is why they wanted to only have men working for them.

Defendants contend that these comments, even if believed by the jury, are only stray remarks which do not constitute direct evidence of discrimination under the framework set forth above. We disagree. In *Febres,* 214 F.3d at 59–61, the First Circuit Court of Appeals specifically addressed the question of what constitutes direct evidence of discrimination. The court explained that "evidence is 'direct' (and thus justifies a mixed-motive jury instruction) when it consists of statements by a decisionmaker that directly reflect the alleged animus and bear squarely on the contested employment decision." *Id.* at 60–61 *citing Taylor v. Virginia Union Univ.,* 193 F.3d 219, 232 (4th Cir.1999) (en banc); *Lambert v. Ackerley,* 180 F.3d 997, 1008–09 (9th Cir.1999) (en banc); *Thomas v. NFL Players Ass'n,* 131 F.3d 198, 204 (D.C.Cir.1997). On that occasion, a defendant's admission that age was one of three criteria used, at least in some cases, to determine which employees would be retained and which would not constituted direct evidence warranting a mixed-motive instruction. The situation in the present case is strikingly similar. As mentioned above, Defendant Restrepo, a decisionmaker regarding Plaintiff's employment, stated to Plaintiff herself that he thought women were not capable of anything and that that was why he wanted to only have men working with him. We believe that these comments are exactly the type of statements that directly reflect a discriminatory animus on the part of a decisionmaker, and that constitutes direct evidence. We find that the present case is indistinguishable from *Febres.* ·

In support of their position, however, Defendants cite two cases which were resolved by the First Circuit after *Febres: Baralt v. Nationwide Mutual Insurance Co.,* 251 F.3d 10 (1st Cir.2001) and *Williams v. Raytheon, Co.,* 220 F.3d 16 (1st Cir.2000). However, both these cases dealt with situations in which the plaintiffs were attempting to prove their discrimination cases *via* the circumstantial evidence under the *McDonnell Douglas* standard. The court did not explicitly consider the issue of what constitutes direct evidence of discrimination in either case, and it is not even clear whether plaintiffs in those cases even alleged that their cases were based on direct evidence of discrimination. As such, both *Baralt* and *Williams* are inapposite to the present case.

Furthermore, even though in *Williams* the court made reference to the fact that some of Defendants' statements were insufficient to establish discriminatory intent, the situation in that case was quite different from the one now before us. In that occasion, the defendant had stated that she believed that the company at issue was run by old white men, and that

she intended to try and bring on more women and young folk. This statement, by itself, is not as derogatory as the statements allegedly made by Defendant Restrepo. Furthermore, we find that the direct evidence presented by Plaintiff in the case before us was more indicative of discriminatory animus directly related to the relationship between Plaintiff's supervisor and Plaintiff. For these reasons, we understand that *Febres* is more comparable to the present situation than *Williams*. The jury in this case was specifically instructed that they could find discriminatory intent from either direct or indirect evidence of discrimination. *See* **Docket # 99** at 10. We will not second-guess the jury's decision when, as is the case here, a reasonable jury could have found that Plaintiff proved her case through direct evidence of discrimination. When direct evidence of discrimination is provided, the case may be submitted to a finder of fact without further ado. *Alvarez–Fonseca v. Pepsi Cola of P.R.*, 152 F.3d 17, 24 (1st Cir.1998). Accordingly, Defendants' motion for judgment as a matter of law dismissing the Title VII claim is **DENIED**.

### Article 1802   Claim

█ Defendant also argues that Plaintiffs' claim under Article 1802 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 5141, is time-barred. In *Padilla Cintron v. Rossello*, 247 F. sUpp.2d 48, 55–56 (D.P.R.2003), this Court held that the filing of an administrative claim with the Department of Labor or the EEOC tolls the applicable statute of limitations and suspends the running of the prescription term for claims brought under Title VII and Law 100. However, the effect of such an administrative filing is different with respect to claims brought under Article 1802. *Id.* Instead, while the administrative claim tolls the applicable statute of limitations, it does not prevent the pres-

criptive term from running anew from the date that the administrative complaint is filed.

In the present case, Plaintiff filed her administrative claim on May 19, 1999, and she filed this suit on September 8, 2000. Hence, more than one year passed from the date that she filed the administrative claim until the date when she filed suit. The prescriptive period applicable to Article 1802 claims is one year. Article 1868 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 5298. Under these circumstances, and since Plaintiffs have failed to allege any other facts which would indicate that the Article 1802 cause of action was again tolled at a later date, Plaintiffs' claims under Article 1802 prescribed before Plaintiffs filed the present suit. Therefore, the part of the judgment awarding Plaintiffs $400,000.00 in damages under Article 1802 must be **VACATED**, and the Article 1802 claim must be **DISMISSED WITH PREJUDICE**.

### Law 100 and Law 69 Claims

█ Defendants also claim that Plaintiff's claim under Law 69 is also time-barred. They argue that, in *Matos Ortiz v. Commonwealth of Puerto Rico*, 103 F.Supp.2d 59, 63 (D.P.R.2000), this Court held that a Law 69 claim is tolled by the filing of an administrative claim, but that the limitations period applicable to a Law 69 claim is not suspended during the pendency of the administrative claim. Since a Law 69 claim has a one year prescription term, *Maldonado v. Russe*, 2001 WL 122004, 2001 TSPR 14 (P.R. Feb. 8, 2001), Defendants argue that the same logic described above as to Plaintiffs' Article 1802 claim applies to the Law 69 cause of action.

In fact, in *Matos Ortiz*, this Court held no such thing. Actually, Law 69 was not even under the consideration of the Court in said case. All that this Court held in

that case was that the prescriptive period applicable to the related statute prohibiting sexual harassment in employment is tolled by the filing of an administrative complaint. There was no need on that occasion, however, to consider whether the running of the prescriptive period was· suspended by said filing. What this Court has said regarding this issue is that "by filing an administrative complaint either with the EEOC or with the Anti–Discrimination Unit of the Department of Labor, and notifying such charge to the defendants, a plaintiff can toll the running of the statute of limitations for any claims under Title VII and Law 100." *Leon–Nogueras v. University of Puerto Rico,* 964 F.Supp. 585, 588 (D.P.R.1997). Furthermore, the Court in *Leon–Nogueras* intimated that "[a]lthough the Puerto Rico Supreme Court has not held that the same holds true for claims of violations of Law 69 or Law 17, that may safely be assumed for purposes of this opinion." *Id.; accord Sifre v. Department of Health,* 38 F.Supp.2d 91, 96 (D.P.R.1999) ("The Puerto Rico Supreme Court has held that the filing of a charge with the EEOC for causes of action under Title VII tolls equivalent causes of action for discrimination under Puerto Rico law"). Defendants' attempt to misguide the Court is itself, well, misguided. Nonetheless, the crux of the matter is that we agree with this Court's opinion in *Leon–Nogueras* that the same logic regarding the tolling and suspension of the prescriptive period applicable to Law 100 is also apposite with respect to its sister cause of action under Law 69. Therefore, we find that the Law 69 claim is not time-barred.

In any case, we believe that dismissal of the Law 69 claim would not require that the damages awarded under Law 100 be vacated. Defendants argue that, since the jury found discrimination based on gender under both Law 69 and Law 100 by answering a single special verdict question which included both laws, the award pursuant to Law 100 must be vacated if the Law 69 claim is found to be untimely. Defendants reason that, since the special verdict question encompassed multiple claims, one of which was time-barred, the Court may not enter judgment based on the other claim. They argue that it is impossible to tell whether the jury's consideration of Law 69 may have affected the verdict.

Even though Defendants' logic would be solid under most factual scenarios, we believe it does not hold water in this case. Both Law 69 and Law 100 prohibit the exact same conduct: intentional discrimination in employment on the basis of gender. The same standards of proof and burden-shifting mechanisms apply under both laws. The elements which must be proved to establish a cause of action under both statutes are exactly the same. As Defendants themselves noted in one of their filings, "Law 69 and Law 100 serve virtually identical purposes and outlaw virtually identical behaviors." *Matos Ortiz,* 103 F.Supp.2d at 64. In fact, the jury was given the exact same instructions regarding both claims. Under these circumstances, it would be unreasonable to think that the jury could have found Defendants violated Law 69 without also finding that Defendants violated Law 100. Actually, no reasonable jury could have done so.

Furthermore, it is well known that the standard of proof applicable under Law 100 is at least as lenient to Plaintiff as the one applicable under Title VII. As such, it is also unreasonable to think that a jury could find Defendants acted in violation of Title VII without also finding Defendants intentionally discriminated under Law 100. Accordingly, we do not believe there is any way in which the jury's consideration of the Law 69 claim could have possibly af-

fected their finding of intentional discrimination on the basis of gender under Law 100.

Nonetheless, Defendants also argue that the Law 100 claim should be dismissed because the burden-shifting mechanism applied under Law 100 has been deemed unconstitutional. Again, Defendants are subtly trying to mislead the Court. This Court, in *Morales v. Nationwide Insurance Company*, 237 F.Supp.2d 147 (D.P.R. 2002) (Pérez Giménez, J.), held that the burden-shifting mechanism of Law 100 was unconstitutional, **as defined by the Puerto Rico Supreme Court in** *Diaz Fontanez v. Wyndham Hotel Corp.*, 2001 WL 1346759, 2001 TSPR 141 (P.R. Oct. 24, 2001), **and as applied to the particular defendant in** *Morales.* There are two reasons why the holding in *Morales* is of no consequence in this case. First, the opinions of other Judges within this Court only serve as persuasive authority, not mandatory. In fact, two other Judges have already distanced themselves from the opinion in *Morales*, as they believe that a different reading of *Diaz–Fontanez* is more appropriate. *See Varela Teron v. Banco Santander de Puerto Rico*, 257 F.Supp.2d 454 (D.P.R.2003) (Laffitte, J.); *Velez Sotomayor v. Progreso Cash and Carry, Inc.*, 279 F.Supp.2d 65 (D.P.R.2003) (Delgado Colón, Magistrate J.). These two more recent cases read *Diaz Fontanez* as requiring **proof**, not mere allegation, of unjustified dismissal to trigger the burden-shifting mechanism of Laws 80 and 100. Under those circumstances, the Court held in both *Varela Teron* and *Velez–Sotomayor*, no Due Process problem exists. We agree. And, in fact, if Defendants revisit the instructions provided to the jury in the present case, *see* **Docket # 99 at 14–16**, they will notice that the Court did not follow the version of the burden-shifting mechanism held to be unconstitutional in *Morales*, but rather the version discussed in *Varela Teron* and *Velez–Sotomayor*, which has also been utilized by the First Circuit in several occasions. *See, e.g., Alvarez–Fonseca v. Pepsi Cola of P.R. Bottling Co.*, 152 F.3d 17 (1st Cir.1998). Hence, Defendants' argument is completely irrelevant to the case at bar.

For all the reasons discussed above, Defendants' motion for entry of judgment as a matter of law dismissing the claims under Laws 69 and 100 is **DENIED.**

### Compensatory and Punitive Damages

Plaintiff has requested that the compensatory damages awarded for gender discrimination be doubled pursuant to Laws 69 and 100. In fact, Plaintiff appears to be requesting that the amount awarded be doubled twice, once for Law 100 and once for Law 69. Defendants, on the other hand request that the compensatory damages be reduced from $250,000.00 to $200,000.00 pursuant to the statutory cap applicable to them under Title VII. Furthermore, they argue that the punitive damage award must be vacated also pursuant to the statutory cap. In any case, Defendants contend that any compensatory damages allocated to the Law 69 and Law 100 claims may not be doubled twice. As a matter of fact, Defendants argue that, an award of both punitive damages under Title VII and double damages under Laws 69 and 100 would punish Defendants twice for the same conduct and is, therefore, improper.

*Allocation of Compensatory and Punitive Damages*

Defendants are correct in stating that Title VII provides for a statutory cap on the total amount of compensatory and punitive damages which may be awarded to a losing defendant for unlawful intentional discrimination. 42 U.S.C. § 1981a(b)(3). In this case, the total amount of compensatory and punitive dam-

ages to be awarded pursuant to the Title VII cause of action may not exceed $200,000.00, since Defendants assertion that they have fewer than 501 employees is uncontested. 42 U.S.C. § 1981a(b)(3)(C). However, Defendants are also implicitly arguing that this statutory cap works to limit the amount of damages which may be granted under Laws 69 and 100. We find this part of their argument lacks merit.

■ "Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination." *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 67, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980) *quoting Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 48–49, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). "Congress specifically declined to preempt state human rights law, instead including a savings clause in Title VII which states: 'Nothing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State ...'" *Oliver v. Cole Gift Centers, Inc.*, 85 F.Supp.2d 109, 113 (D.Conn.2000) *quoting* 42 U.S.C. § 2000e–7.

■ It is undisputed that a plaintiff generally may not recover damages multiple times under the same legal theory. A plaintiff is entitled to "only a single slice of the pie—but the choice of the slice [is hers]." *Freeman v. Package Machinery Co.*, 865 F.2d 1331 (1st Cir.1988). Nonetheless, the Second Circuit has held that "where only a single award of damages, not segregated into separate components, is made, the preferable rule, we think, is that the successful plaintiff **be paid under the theory of liability that provides the most complete recovery.**" *Magee v. United States Lines, Inc.*, 976 F.2d 821, 822 (2d Cir.1992) (emphasis added).

In fact, several courts have specifically permitted allocation of compensatory damages to state law claims and punitive damages to Title VII claims in order to maximize the plaintiff's recovery by removing the compensatory damage award from Title VII's statutory cap. *See, e.g., Martini v. Federal Nat'l Mortgage Ass'n*, 178 F.3d 1336, 1349–50 (D.C.Cir.1999); *Hall v. Consolidated Freightways Corp. of Delaware*, 337 F.3d 669, 678–79 (6th Cir.2003); *Gagliardo v. Connaught Laboratories, Inc.*, 311 F.3d 565, 570–71 (3rd Cir.2002); *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 509–10 (9th Cir.2000); *Funk v. F & K Supply, Inc.*, 43 F.Supp.2d 205, 225–26 (N.D.N.Y.1999); *Anderson v. YARP Restaurant, Inc.*, 1997 WL 27043, at *6–7 (S.D.N.Y. Jan. 23, 1997); *Luciano v. Olsten Corp.*, 912 F.Supp. 663, 675 (E.D.N.Y.1996), *aff'd*, 110 F.3d 210 (2d Cir.1997); *Goodwin v. Seven–Up Bottling Co. of Philadelphia*, 1998 WL 438488, at *6 (E.D.Pa. July 31, 1998); *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 982 F.Supp. 786, 787–89 (W.D.Wash.1997). By following this approach the court can make sure that compensatory damages allocated to claims other than the Title VII claims are not subject to Title VII's cap on damages. *Pavon v. Swift Transportation Co.*, 192 F.3d 902, 910–911. This reallocation of damages, then, ensures the effectiveness of the above-cited provision in Title VII which establishes that "[n]othing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State ..." Otherwise, the statutory cap could have the effect of limiting the damages to which plaintiffs are entitled under the applicable state statutes.

In general, this Court has ample discretion regarding how to allocate a damages award. *Passantino*, 212 F.3d at 509. We

see no reason why we should not follow the precedent discussed above regarding the reallocation of damages so as to give effect to the Commonwealth laws, as well as Title VII. We are further encouraged to do so by the fact that the First Circuit Court of Appeals has also leaned towards following this tendency in its decisions in *Kerr–Selgas v. American Airlines, Inc.*, 69 F.3d 1205 (1st Cir.1995) (holding that the district court supportably ascribed the entire compensatory damages award to the commonwealth claims) and *Hogan v. Bangor & Aroostook R.R.*, 61 F.3d 1034, 1037 (1st Cir.1995) (preserving compensatory damages award by applying full damages cap to punitive damages award).

In the present case, the jury awarded Plaintiff compensatory damages for gender discrimination in the amount of $250,000.00 and punitive damages under Title VII in the amount of $250,000.00. Since, as discussed above, the total amount of compensatory and punitive damages awarded under Title VII is limited to $200,000.00, we will reduce the award of punitive damages to $199,999.00. Furthermore, we will allocate the amount of $1.00 remaining under the cap to compensatory damages under Title VII so as to allow for the imposition of punitive damages under said statute. *See Kerr–Selgas*, 69 F.3d 1205 (reversing an award of punitive damages under Title VII due to the fact that the court did not allocate any compensatory damages to the Title VII claim, and the plaintiff failed to request the award of nominal damages). The remaining $249,999.00 in compensatory damages awarded by the jury are, therefore, allocated under the Law 69 and Law 100 causes of action.

*Double Damages Under Laws 69 and 100*

Plaintiff also asserts that the compensatory damages awarded under Laws 69 and 100 should be doubled, pursuant to both statutes. Plaintiff is correct in asserting that both Law 100 and Law 69 provide that a victorious plaintiff is entitled to double damages. Section 1(a)(1) of Law No. 100 of June 30, 1959, as amended, 29 P.R. Laws Ann. § 146(a)(1) (guilty employer liable "for a sum equal to twice the amount of damages sustained ..."); Section 21(a)(1) of Law No. 69 of July 6, 1985, 29 P.R. Laws Ann. § 1341(a)(1) (guilty employer liable "a sum equal to twice the amount of damages said action caused ..."). However, we agree with Defendants' argument regarding the impropriety of imposing quadruple damages by combining the double damages provisions of both statutes. In *Matos Ortiz*, 103 F.Supp.2d at 64, this Court explained that "Law 69 and Law 100 serve virtually identical purposes and outlaw virtually identical behaviors." As previously discussed, both Law 69 and Law 100 prohibit the exact same conduct: intentional discrimination in employment on the basis of gender. The same standards of proof and burden-shifting mechanisms apply under both laws. The elements which must be proved to establish a cause of action under both statutes are exactly the same. Furthermore, the Court in *Matos Ortiz* noted that further evidence of the unity of purpose and structure of Laws 69 and 100 is provided by the fact that both have provisions for the doubling of a plaintiff's damage award.

It is well established that "a plaintiff is entitled to only one full recovery, no matter how many legal grounds may support the verdict." *Freeman v. Package Machinery Co.*, 865 F.2d 1331, 1345 (1st Cir. 1988). Since Laws 69 and 100 outlaw virtually identical behaviors and provide for virtually identical causes of action, applying both statutes' doubling provisions, in sequence, would amount to compensating Plaintiff with the double damages **twice.**

Plaintiff may be awarded double damages pursuant to her rights under Laws 69 and 100, but nothing would seem to indicate that she is entitled to **double double damages.**

■ Defendants, however, go on to claim that applying the double damages provision, even if done only once, is improper if coupled with the imposition of punitive damages under Title VII. They argue that allowing Plaintiff to recover punitive damages under Title VII plus double damages under either Law 100 or Law 69 amounts to double punishment for precisely the same conduct, once under a federal theory of liability and again under the corresponding state theory. They rely on the Supreme Court's opinion in *State Farm Mutual Automobile Insurance Co. v. Campbell,* 538 U.S. ——, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003), in which the Court held that excessive or unreasonable awards of punitive damages violate the Due Process Clause. Defendants argue that, in this case, exposing them to double punishment for essentially the same conduct amounts to a due process violation.

The problem with Defendants' argument is that the double damages imposed by Laws 69 and 100 are not punitive damages which result from a defendant's elevated degree of culpability. Laws 69 and 100 grant double damages to **all victorious plaintiffs.** This means that the doubling of the damages is not a punishment levied due to particularly despicable conduct. It is simply the measure of damages imposed on all employers who intentionally discriminate against their employees.

On the other hand, punitive damages under Title VII are only granted to plaintiffs who prove that the defendant "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual."

42 U.S.C. § 1981a(b)(1). The jury in the present case made a specific finding to this effect. It is based on such a finding that they awarded punitive damages under Title VII. Hence, the punitive damage award was imposed as punishment for Defendants' malicious and recklessly indifferent conduct. This is different from the reason why double damages are awarded under Laws 69 and 100. The punitive damages under Title VII are not punishing the same conduct as the double damages award under Laws 69 and 100 (which are simply compensation for the intentional discrimination), but are rather punishing the higher degree of culpability established by the jury's finding of malice and reckless indifference.

In fact, the rationale discussed above has already been espoused by this Court in a case which, surprisingly enough, Defendants cite in support of their position. In *Selgas v. American Airlines, Inc.,* 858 F.Supp. 316 (D.P.R.1994), *vacated in part on other grounds* by *Kerr–Selgas,* 69 F.3d 1205, this Court specifically held that an award of double damages under Law 100 and punitive damages under Title VII does not constitute an impermissible imposition of double punishment. Since this precedent is so on point, we will liberally quote it:

> While the Puerto Rico statute is not explicitly punitive, the effect, of course, is to punish a defendant. But because the recovery of punitive damages under Title VII requires a showing of malice or reckless indifference, **we cannot say that allowing the double damages under state law and punitive damages under federal law would result in double punishment for the same conduct**—even if the jury had not found malice or reckless indifference, the plaintiff would have been entitled to recover an amount equal to double her

compensatory damages under state law. We think that allowing an extra modicum of punishment for intentional discrimination, as provided by Title VII, is not duplicative.

In addition, the text of Title VII supports our decision not to eliminate federal punitive damages. The statute provides that "[n]othing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State." *Id.* at 325 *quoting* 42 U.S.C. § 2000e–7. It is noteworthy that this part of the Court's opinion was implicitly affirmed by the First Circuit Court of Appeals in *Kerr–Selgas,* 69 F.3d 1205. The rationale expounded in *Kerr–Selgas* is identical to the one adopted by this Court in the present case.

Therefore, the Court finds that awarding double compensatory damages under Laws 69 and 100 and punitive damages under Title VII does not amount to an unconstitutional or otherwise illegal double punishment. The award of $249,999.00 in compensatory damages under Laws 69 and 100 will, consequently, be doubled for a total of $499,998.00.

### Front Pay

██ Plaintiff has requested that the Court amend the judgment to include an award of front pay. Plaintiff alleges that reinstatement is not possible in this case for several reasons, including the fact that her position is no longer available. Defendants, on the other hand, argue that an award of front pay would be improper in this case because reinstatement is still an option. Nonetheless, we agree with Plaintiff that, given the evidence of animosity between the parties which was presented at trial, it would be inappropriate, in the interests of justice and equity, to grant reinstatement in the present case.

██ On the other hand, Defendants also argue that front pay should not be awarded because Plaintiff has failed to demonstrate an inability to find similar employment in the future. We agree. It is well established that "front-pay is available as an alternative to compensate the plaintiff from the conclusion of trial through the point at which the plaintiff can either return to the employer **or obtain comparable employment elsewhere.**" *Selgas v. American Airlines,* 104 F.3d 9, 12 (1st Cir.1997) (emphasis added). Furthermore, the plaintiff has a duty to mitigate her damages by seeking such comparable employment. This duty to mitigate limits the amount of front-pay available to a plaintiff. *Reiner v. Family Ford, Inc.,* 146 F.Supp.2d 1279 (N.D.Fla.2001). A plaintiff's "ability to find similar employment in the future is relevant to both the trial court's discretion to award front-pay and to the calculation of such award." *Scarfo v. Cabletron Systems, Inc.,* 54 F.3d 931 (1st Cir.1995).

██ In the present case, Plaintiff has failed to show an inability to find similar employment in the future so as to justify a decision to award front-pay, or to allow the Court to calculate the size of such an award. An award of front-pay is discretionary. *Scarfo,* 54 F.3d at 954; *Selgas,* 104 F.3d at 13. The burden was on Plaintiff to prove that she was entitled to front-pay. She has not done so to the satisfaction of the Court. Under these circumstances, we will exercise our discretion to not award front-pay to Plaintiff. Therefore, Plaintiff's motion seeking the amendment of the judgment to include such an award is **DENIED.**

### Award of Interest

██ Lastly, Plaintiff has also requested that the judgment be amended to in-

clude interest on the award. Defendants point out that, although 28 U.S.C. § 1961 provides that interest "shall be allowed on any money judgment in a civil case recovered in a district court," "[s]uch interest shall be calculated from the date of entry of the judgment..." 28 U.S.C. § 1961. Thus, Defendants argue, while Plaintiff is entitled to interest from the date when judgment is entered, she is not entitled, as a matter of course, to prejudgment interest.

In *Dopp v. Pritzker*, 38 F.3d 1239, 1252 (1st Cir.1994) the First Circuit Court of Appeals held that "[i]n a diversity case in which the substantive law of Puerto Rico supplies the basis of decision, a federal court must give effect to Rule 44.3(b) of the Puerto Rico Rules of Civil Procedure." Pursuant to Rule 44.3(b), the plaintiff is entitled to prejudgment interest only if the defendant acted in an obstinate manner during the litigation. *Ramos v. Davis & Geck, Inc.*, 167 F.3d 727, 734 (1st Cir.1999). In the present case, Plaintiff has made no argument or allegation that Defendants acted obstinately. Therefore, an award of prejudgment interest would be inappropriate under the Commonwealth law claims. However, the judgment will be **AMENDED** to include post-judgment interest as to these claims, pursuant to 28 U.S.C. § 1961.

On the other hand, with respect to Plaintiff's Title VII cause of action, it is well settled that "whether prejudgment interest is needed to make a plaintiff whole is within the discretion of the district court." *Hogan v. Bangor & Aroostook R.R.*, 61 F.3d 1034, 1037 (1st Cir.1995) *citing Conway v. Electro Switch Corp.*, 825 F.2d 593, 602 (1st Cir.1987). In particular, "interest is an element that 'should' be included in backpay." *Gloria v. Valley Grain Products, Inc.*, 72 F.3d 497, 499 (5th Cir.1996); *see also Chamberlin v. 101 Realty, Inc.*, 915 F.2d 777 (1st Cir.1990).

"Furthermore, the goal of Title VII is to restore an employee who has been discriminated against to his or her rightful place by making the employee financially whole again." *Gloria*, 72 F.3d at 499 *citing Deloach v. Delchamps, Inc.*, 897 F.2d 815, 822 (5th Cir.1990). The time value of money causes an award of back pay to be worth less if prejudgment interest is not included. Plaintiff was discharged in December 1998, and the trial was not held until June 2003. The numerous steps necessary to prove discrimination in employment regretfully take an extended period of time. The employee should not be punished for this delay if, after the legal process is completed, discrimination is found to have occurred. This rationale leads us to conclude that prejudgment interest on Plaintiff's back pay award should be granted. Therefore, the judgment will be **AMENDED** to include prejudgment interest as to the back pay award, in addition to post-judgment interest pursuant to 28 U.S.C. § 1961.

On the other hand, the same rationale is not applicable to the award of punitive damages under Title VII. Punitive damages are imposed at the time of trial to punish defendants for their malicious and recklessly indifferent conduct. The amount of these damages is calculated by the jury at the conclusion of trial, while bearing in mind what they believe, **at that moment**, would be an adequate amount of punitive damages which would serve to deter defendants from engaging in future violations of the law. As such, the Court believes that applying prejudgment interest to such an award would be inappropriate. However, the judgment will be **AMENDED** to include post-judgment interest as to the punitive damages award, pursuant to 28 U.S.C. § 1961.

### Conclusion

For all the reasons discussed above, the parties' motions are **GRANTED in part**

and **DENIED in part**. The judgment entered in this case on June 30, 2003 (**Docket # 103**) will be **AMENDED** as follows:

1) the award for $400,000.00 in damages under Article 1802 of the Puerto Rico Civil Code will be **VACATED** and the claims brought under Article 1802 will be **DISMISSED WITH PREJUDICE**;

2) Plaintiff shall be awarded $199,999.00 in punitive damages under Title VII;

3) Plaintiff shall be awarded $1.00 in compensatory damages under Title VII;

4) Plaintiff shall be awarded $499.998.00 in compensatory damages under Laws 69 and 100;

5) Plaintiff shall be awarded post-judgment interest on the totality of the awarded damages; and

6) Plaintiff shall be awarded prejudgment interest on the back pay award.

The Court shall issue the corresponding Amended Judgment forthwith. Furthermore, the Clerk of the Court is instructed to forward a copy of this Opinion and Order, and of its accompanying Amended Judgment to the Court of Appeals for the First Circuit.

**SO ORDERED.**